ROBERT H. PARKS ET AL.

V.

MELVILLE S. NICHOLS.

1.  BILL OF EXCHANGE—PRESUMPTION THAT DRAWER HAS FUNDS IN
DRAWEE'S HANDS.—In the absence of explanatory evidence, it is the
legal presumption that the drawer of a bill of exchange has funds in the
hands of the drawee and after such bill has been accepted and paid, it will
be presumed that it was paid out of the drawer's funds in the hands of the
drawee.  A bill of exchange accepted and paid by the drawee is therefore,
of itself, no evidence of an existing indebtedness from the drawer to the
drawee.

2.  EVIDENCE REBUTTING SUCH PRESUMPTION.—This legal presumption
may be rebutted by proof of the actual transaction between the parties, and
the nature of the transaction may sometimes be inferred from the situa-
tion and relations of the parties and the general scope of their dealings.
*Quære,* whether the evidence in the present case may not be sufficient to
rebut said presumption.

3.  NEW TRIAL GRANTED ON GROUND OF SURPRISE.—A court should be
very careful not to mislead the parties by its own course of action and
when it seems likely that it has done so, it should afford prompt and ade-
quate relief.  A new trial is granted on the ground of surprise, since
plaintiffs' counsel, after the repeated decisions by the court during the
course of the trial, were justified in relying upon the rules of law as thus
interpreted and applied by the court and in governing their action accord-
ingly, and not introducing further evidence.

APPEAL from the Circuit Court of Cook county; the Hon.
LORIN C. COLLINS, Judge, presiding.  Opinion filed July 28,
1886.

Messrs. DOOLITTLE & McKEY and Mr. J. R. DOOLITTLE,
JR., for appellants; that the garnishee can set off against
the judgment debtors and the attaching creditor only such
demands as he might have brought suit upon against
the judgment debtors or the attaching creditor, had no
garnishment writ been issued, cited Chap. 62, Sec. 13,
Rev. Stat. Ill.; Scammon v. Kimball, 92 U. S. Sup. Ct.
362; Hilliard v. Walker, 11 Ill. 644; Hinckley v. West.

9 Ill. 136; Coates v. Preston, 105 Ill. 470; M. C. R. R. Co. v. C. & M. L. S. R. R. Co., 1 Bradwell, 399.

In the case of accommodation paper, where the party has, by the terms of the instrument, declared his liability, he may recover the money paid from the party for whom it was advanced, and may defend as against the drawer of an accepted bill or the payee of an accommodation note: 1 Wait's Actions and Defenses, 608; Snydam v. Westfall, 2 Denio, 205; Wright v. Garlinghouse, 26 N. Y. 539; Hunter v. Kibbe, 5 McLean, 279; Hardy v. Ross, 4 Bradwell, 501.

A new trial will be granted, on the ground of surprise, when the court has, by its rulings on the trial in regard to the admissibility of evidence, induced a party to omit evidence : Morrow v. Hatfield, 6 Humph. 108; Bowden v. Morris, 1 Hughes, 378; The S. B. Violet v. McKay, 23 Arkansas, 543; Dunham v. Baxter, 4 Mass. 79.

Mr. FRANCIS A. RIDDLE, for appellee; that the presumption exists that the drawer has funds in the hands of the drawee and that his acceptance and payment are an admission thereof, cited Gillilan v. Myers, 31 Ill. 526; Horstman v. Henshaw, 1 Howard, 177; 1 Parsons on Notes and Bills, 323 (1 Am. Ed.).

BAILEY, P. J.  In this case the Bank of the State of New York commenced its suit by attachment against Robert A. Parks, Cumberland G. White and Horace E. Dillingham, co-partners under the firm name of R. H. Parks & Co., to recover an indebtedness of $45,500, and caused Mellville S. Nichols to be summoned as a garnishee.  The defendants appeared and waived service of process, and on their confession judgment was rendered against them for $38,065.51 and costs.  Interrogatories having been filed, the garnishee answered denying having in his possession or charge any property or effects of the defendants, or being indebted to them in any sum, and issue having been taken on said answer, a trial was had before the court, a jury being waived, resulting in a finding and judgment in favor of the garnishee.

The evidence shows that the firm of R. H. Parks & Co.

was organized on the 1st day of March, 1883, for the purpose of carrying on the business of buying and selling grain, provisions, stocks and cotton on commission, and having its principal place of business in the city of New York, and continued in business until June 19, 1883, when it failed; that said garnishee, at the same time, was engaged, under the name of M. S. Nichols & Co., in the purchase and sale of grain and provisions on commission on the Board of Trade of Chicago; that said R. H. Parks & Co., at or shortly after their organization as a firm, with the view of engaging very extensively in dealings on said Board of Trade, employed said Nichols to act as their agent and broker in Chicago upon a stipulated commission, and to facilitate their transactions with him, procured the use of a private telegraph wire running from New York to Chicago; that by the arrangement between R. H. Parks & Co. and Nichols, said firm was to keep sufficient margins in Nichols' hands to protect him against loss on transactions entered into by him on their account, and, as is conceded by appellee's counsel, the usual and indeed the only way in which Nichols received the money required as margins under said arrangement, was by drafts drawn by him on R. H. Parks & Co.; that in pursuance of said employment said Nichols transacted a large amount of business for said firm on said Board of Trade, by way of buying and selling grain and provisions, said purchases and sales amounting in all to about $9,000,000.

It is claimed that during the course of these transactions R. H. Parks & Co. advanced to said Nichols large sums of money, and that the accounts between said parties show that there was a considerable balance due from him to them. It seems to be conceded that the aggregate result of said business was a net loss of $84,744.58, and that Nichols is entitled to a credit for that sum besides his commissions. It appears, however, that during the continuance of the business, said parties drew drafts on each other from time to time, which were honored and paid, the total amount of money so transmitted between them being nearly $450,000. The plaintiffs, to show the several amounts of money advanced by them to Nichols,

offered in evidence a series of drafts drawn on them by him, payable to the order of various Chicago banks, amounting in the aggregate to nearly $300,000, all of said drafts appearing, from indorsements thereon, to have been presented and paid. Objection to said evidence was made by said garnishee and overruled by the court, it being held that said drafts were competent evidence in the case, the court accompanying his decision with certain remarks which are preserved in the bill of exceptions, and from which the counsel for the plaintiffs understood him to hold, as they claim, that said drafts were *prima facie* evidence of money advanced from R. H. Parks & Co. to Nichols. The foregoing being substantially all the evidence tending to prove that said moneys had been so advanced, the counsel for Nichols, at close of the plaintiffs' evidence, demurred to the evidence, and moved the court to enter judgment thereon in favor of Nichols. The demurrer and motion were overruled, the court holding that said evidence established, *prima facie,* a right to recover against the garnishee, and in announcing this decision also used language which was understood by plaintiffs' counsel as holding that the drafts of themselves were evidence tending to prove an indebtedness from Nichols to R. H. Parks & Co. The counsel for Nichols then entered a further motion to exclude said drafts, which motion was also overruled. The counsel for Nichols then introduced in defense a large number of similar drafts drawn by R. H. Parks & Co. on Nichols, and purporting to have been duly presented and paid. As the evidence then stood, assuming that said drafts were evidence in each case of moneys advanced by the drawees to the drawers, it would appear from all the evidence, as we think, that there was a considerable balance due and owing from Nichols to R. H. Parks & Co. The court thereupon took the case under advisement for a number of weeks, and then announced his decision, holding, that in the case of each of said drafts, the legal *prima facie* presumption was that they were drawn upon funds in the hands of the drawee, belonging to the drawer, and that none of the drafts could be considered as tending to prove the advancement of money by one party to the other.

The court thereupon practically excluded all of said drafts from his consideration, and upon the remaining evidence found a balance in favor of Nichols equal to the aggregate losses sustained upon said transactions on the Board of Trade and his commissions. The counsel for the plaintiffs thereupon moved for a new trial, basing their motion mainly upon the fact shown by affidavit, that they had been misled by the various rulings of the court during the course of the trial, as to the sufficiency and effect of the evidence produced by them, and had been thereby induced to forbear producing other competent evidence which they had at hand tending to prove the plaintiffs' account for moneys advanced by them to said Nichols, but the court overruled said motion and gave judgment discharging the garnishee.

It seems to be the well settled rule that, in the absence of explanatory evidence, it is the legal presumption that the drawer of a bill of exchange has funds in the hands of the drawee, and after such bill has been accepted and paid, it will be presumed that it was paid out of the drawer's funds in the hands of the drawee. It follows that a bill of exchange accepted and paid by the drawee is, of itself, no evidence of an existing indebtedness from the drawer to the drawee. It can not be doubted, however, that this legal presumption may be rebutted by proof of the actual transaction between the parties, and the nature of the transaction may sometimes be inferred from the situation and relations of the parties and the general scope of their dealings. We are not clear that the evidence in the present case may not be sufficient to rebut said presumption. It is proved that R. H. Parks & Co. and Nichols entered into business relations with each other by virtue of which R. H. Parks & Co. were required to advance large sums of money to Nichols from time to time, and that the mode by which such advances were to be made, according to the agreement of the parties, was by honoring Nichols' drafts whenever he needed the money. The business thus contemplated was actually carried on, and during its progress Nichols drew on R. H. Parks & Co. said drafts, which were duly honored and paid. There was no evidence outside of the drafts

themselves tending to show money belonging to Nichols in the hands of R. H. Parks & Co. to meet said drafts. We are by no means-clear that under these circumstances there is not a legal presumption that the drafts were drawn in pursuance of the agreement between the parties, and in the due course and as a part of the commercial dealings in which they were engaged.

But apart from this consideration, we are inclined to the view that a new trial should have been awarded the plaintiffs on the ground of surprise. The court, during the course of the trial, by repeated decisions, held that the drafts in question were competent evidence tending to prove the plaintiffs' cause of action, and by overruling the demurrer to the evidence he held that the plaintiffs had made out a *prima facie* case, a conclusion which could have been reached only by holding that the drafts, when received in the light of all the other evidence, tended to prove a subsisting indebtedness from Nichols to the plaintiffs to the amount of the drafts. It would seem that the plaintiffs' counsel, after these repeated decisions, were justified in relying upon the rules of law as thus interpreted and applied by the court, and in governing their action accordingly. The view taken by the court in finally deciding the case seems to us to be 'clearly inconsistent with the one announced when the evidence was admitted, and particularly when the demurrer to the evidence was overruled, and was well calculated to operate as a surprise upon the plaintiffs. A court should be particularly careful not to mislead the parties by its own course of action, and when it seems likely that it has done so, it should afford prompt and adequate relief. In this case we think a new trial should have been awarded, or at least, the case should have been opened to the parties for the introduction of further evidence.

It can scarcely be doubted that the evidence necessary to clear up the questions left so doubtful is not difficult to obtain. When we consider the magnitude of these transactions, it is very manifest that it must be within the personal knowledge of the parties themselves whether these drafts represent money advanced by the plaintiffs to Nichols, or an indebted-

ness which they already owed him. We can not but express our astonishment that they were not examined on that subject when on the stand. We can not acquit counsel of apparent negligence in this respect. But we are of the opinion that in justice to the parties a new trial should be awarded. For this reason the judgment will be reversed and the cause remanded.

Reversed and remanded.