THE SANTAQUIN MINING COMPANY, a Corpora-
tion, Appellant, v. THE HIGH ROLLER MINING
COMPANY, a Corporation, Appellant.

### No. 1400.   (71 Pac. 77.)

**1. Deed: Delivery to Grantee.**

A deed executed and recorded by the owners of a mining claim,
naming as grantee a corporation then contemplated, and ac-
tually organized a few days thereafter, and placed in the
hands of a promoter of the corporation to be delivered to it
when it should be fully organized, and afterwards delivered
to it by such promoter, is valid and effectual to pass the title
from the time of such delivery.

**2. Same.**

The placing of such deed in the hands of the promoter, with in-
structions to deliver it to the company when formed, did not
of itself constitute a delivery.

**3. Action to Quiet Title: Appeal: Disposition of Cause.**

Where, in an action to quiet title to a mining claim, the court
erroneously refused to receive in evidence the deed by which
plaintiff acquired its title, and therefore defendant offered no
evidence to rebut such title, the appellate court, on reversing
the judgment because of such error, should not order judg-
ment in favor of plaintiff, but should direct a new trial.

(Decided January 16, 1903.)

Appeal from the Fourth District Court, Utah County.—*Hon.
John E. Booth,* Judge.

Adverse proceeding to determine the right of possession
to the Silver King Mining claim. The opinion states the
facts. From a judgment denying relief to either party, both
parties appealed.

REVERSED.

*Messrs. King, Burton & King* for plaintiff appellant.

There was no attempted delivery of the deed until after the corporation had been fully organized. That being true, there was no execution of the deed in question, to a grantee not *in esse*. The mere writing and signing of the deed did not constitute the instrument a deed. Delivery was essential to its execution; and the instrument did not take effect as the deed of the locators until after the organization of the company. Therefore, when the execution of the deed was completed the corporation was in existence. 4 Kent's Com., p. 450; Bishop, Cont., p. 47, sec. 325; Devlin on Deeds, sec. 260.

As stated delivery was essential to the validity of the deed, it took effect only after delivery. 4 Kent, Com., 454; Bishop on Cont., sec. 26; Brown v. Brown, 66 Maine 316; Devlin on deeds, secs. 177 and 264.

Acceptance by the grantee is an essential part of delivery. 3 Washb., Real Prop., p. 310; Hibbard v. Smith, 67 Cal. 547.

We think it is wholly immaterial whether the grantee is *in esse* at the time of the making and signing of the deed. If it is in existence when the deed is delivered the deed is valid and passes the title held by the grantors. Spring Garden Co. v. Hulings Lumber Co., 32 W. Va. 357; 3 Washb., Real Prop., p. 300; Rotchs Wharf Co. v. Judd, 108 Mass. 227; City Bank of Kenosha v. McClellan, 21 Wis. 112; Conover v. Porter, 14 Ohio St. 450; Chauncey v. Arnold, 24 N. Y. 330.

*Messrs. Powers, Straup & Lippman* for defendant appellant.

In Utah Optical Co. v. Kieth, 18 Utah 464, this court held that "one of the essential requisites of a lease is the existence of some one taking and holding as lessee; and the

plaintiff corporation not being in existence at the time it is claimed the lease was made, no lease could have been made to it." 1 Devlin on Deeds, sec. 123, p. 115; Hunter v. Watson, 12 Cal. 363; Phelan v. San Francisco, 6 Cal. 531; Miller v. Chittenden, 2 Iowa 368; Barr v. Schroeder, 32 Cal. 610; Hulick v. Scovill, 4 Ill. 191.

MARIONEAUX, District Judge.—In this case both parties have appealed from the decree of the district court, and the case, briefly stated, is as follows: The complaint alleges plaintiff's corporate existence, and that on January 1, 1895, T. J. Kirkman, George E. Kirkman and T. W. Kirkman, duly entered upon certain vacant mineral land of the United States, and located the Silver King mining claim, and that during each year since the location the locators and their successor in interest (plaintiff) duly performed the work required by the laws relating to annual work on mining claims; that the locators duly conveyed, by proper deed, their rights to plaintiff, and that plaintiff is the owner and in possession of said mining claim; that after the location of the Silver King the defendant, claiming to be the owner of an alleged mining claim called the "High Roller," wrongfully caused the latter to be so surveyed as to overlap the Silver King, and include a portion thereof (describing it), amounting to 8.397 acres; that on July 15, 1899, the defendant made application to the proper authorities of the United States for patent for the said High Roller claim, including the said 8.397 acres claimed to be a portion of the Silver King claim; that within sixty days after said application plaintiff filed in the land office a protest and adverse claim in due form, and that thereupon proceedings were stayed to await the determination by a court of competent jurisdiction of the right of possession of said disputed area of ground. The complaint contains other formal allegations that it is not necessary to recite. The defendant's answer admits the corporate

existence of plaintiff, but denies the other allegations of the complaint, and further alleges that it (defendant) was incorporated March 18, 1899; that on November 5, 1898, the said High Roller claim was mineral land of the United States, subject to location, and on said day was entered upon and located as a mining claim by A. O. Jacobson, H. Mangum, Jr., and I. H. Spriggs, and that ever since the date of location the said High Roller claim has been actually and exclusively occupied and possessed by said locators and by defendant as their successor in interest by virtue of a deed of conveyance from them to it. The answer further avers that defendant is now the owner and entitled to the possession of said High Roller claim. Each party prays that its title be quieted. Plaintiff therefore claims the area in dispute by virtue of a valid location of the Silver King claim, and legal succession to the rights of the locators; defendant claims title to the same area by virtue of a valid location of the High Roller claim, and legal succession to the rights of the locators.

Upon the trial the plaintiff offered W. H. West, Wm. Van Ausdale, J. C. Holman, and others to prove a valid location of, and continuous assessment work upon, the said Silver King claim, in order, of course, to show that the area in dispute was part of a valid mining claim, and not public land subject to location, at the time of the location of the High Roller claim. Plaintiff, having concluded that branch of the case, next offered in evidence its articles of incorporation, which were received over the objection of the defendant. The evidence of plaintiff's succession to the rights of the original locators of the Silver King was as follows: W. H. West testified that one day in the year 1897 he saw the original owners of the Silver King claim at Santaquin, and "there was talk of incorporation," and the following paper was signed by T. W. Kirkman, Geo. E. Kirkman, and T. J. Kirkman, all the original locators of said claim: "This certifies that we, the undersigned, for and in consideration of

one dollar, in hand paid, the receipt of which is hereby acknowledged, and 4,000 shares of stock in the Santaquin Mining Company, which shall be assessable, hereby agree to sign and deliver to the Santaquin Mining Company a good and sufficient deed conveying all our interest in the Silver King claim, situate in the Santaquin mining district, Utah county, Utah." The paper was admitted in evidence over the objection of the defendant. Witness continuing: "After I made this arrangement with owners, went to Salt Lake, and prepared to incorporate, and the articles were prepared. Q. What, if any, arrangements were made as to the deed of this Silver King claim? A. I made arrangements with these parties that owned the property that they were to sign the deed conveying the property to the proposed corporation, the Santaquin Mining Company, and that I was to hold the deed until the company was organized and incorporated into a company. There were other papers in connection with the deed. The deed was handed to me by T. J. Kirkman, one of the grantors, with instructions to deliver it to the company when incorporated. I took the deed, and after incorporation I delivered it to J. A. West, the secretary. It was recorded." Cross-examination: "Think Kirkman recorded deed before it was handed to me. Deed is dated August 17, and recorded August 21. Think I had it in my hands after August 21. Kirkman mailed it to me after it was recorded. It was mailed to me before organization of the company. The letter said, 'Deliver this to the company when it is organized.' I was told to hold the deed until the company was formed, and then deliver it. Before the deed was mailed to me, I had a talk with the Kirkmans about organization, and about taking the deed to hold until the company was formed." George E. Kirkman testified as follows: "Deeded my interest to plaintiff in 1897. Q. State what, if any, arrangements and negotiations were between you and the owners and Mr. West, or any other person, about this? A. Arrangements were that we

deed our claims to the Santaquin Mining Company until it
was incorporated. We gave West the deed, and told him
to hold it until the company was organized and fixed so that
they could take the deed. We were to get stock in the com-
pany after the company was organized. The stock was put
in my father's name. I signed the deed. I think it was
handed by my father to Mr. West." Cross-examination: "I
do not know whether that was before it was recorded. It
may have been sent by letter. Was not there when my
father handed it or mailed it to West. Am not certain which
way it went. Do not know how it was delivered." W. H.
West, recalled, testified: "The deed shown me in Mining
Record No. 35, page 538, is a copy of the one handed me.
Q. Mr. West, I will ask you whether or not, when you
were first at Santaquin in July or August, in company with
Mr. Kirkman, there was any talk about formation of a cor-
poration? A. Yes, sir; there was. They were to be
stockholders. Mr. T. J. Kirkman was an incorporator.
The basis of the incorporation was to acquire this property.
In pursuance of this talk, the articles were prepared about
August 18 or 19—a few days before they were signed, I
think. After they were prepared, I visited the owners of
the Silver King at Santaquin to make final arrangements
about the deed. Told the grantors that the articles were
prepared, and it was arranged so that they were to have so
much stock. The conveyance was made to company some
time before when I was first down and made arrangements
for the property. After we made final arrangements about
the articles, it was agreed that they should be prepared, and
the company formed. Articles must have been drawn up
August 18, and it is apparently true that they were exe-
cuted August 19. They were dated Salt Lake City, Au-
gust 18, 1897, and signed and sealed the next day. A draft
of the articles was made early in August, but was amended
and altered, and finally drawn again, and later signed.
The first drawing of the paper was after my arrangements

with the owners of the property.    Do not know why we did
not put into the articles a statement that the property was
to be the capital stock.    It was according to the direction of
some attorney."    Plaintiff then offered, and the court re-
ceived in evidence, plaintiff's certificate of incorporation.
Next plaintiff offered the deed from the original locators
to the Santaquin Mining Company.    The deed bears date
August 17, 1897, and purports.to have been acknowledged
the same day; whereas the articles of agreement of incorpora-
tion of plaintiff company bear date and acknowledgment two
days later, and were filed with the recorder of Salt Lake
county and the Secretary of State August 30, 1897.    Defend-
ant objected to the deed upon the ground that it was void,
"because [as its counsel stated in his motion] there must
be a grantor and a grantee in existence at the time the deed
is executed and delivered."    The objection was sustained
by the trial judge, and the deed excluded from the proofs
in the case.    To this ruling plaintiff excepted, and rested
its case.    Defendant moved the court for a nonsuit upon
the ground that plaintiff had not connected itself with the
title of the original locators, since it was not in existence at
the time of the execution of the deed.    Other grounds for
a nonsuit were also insisted upon, but the court sustained the
motion on the ground "that there was no corpo ation exist-
ing at the time of the deed; that the corporation did not
succeed to the title."    Defendant then proceeded upon its
part to introduce testimony tending to show a valid location
of the High Roller claim by the persons named in the defend-
ant's answer, the maintenance of the possessory title by
proper and timely assessment work, and its own legal suc-
cession to the title of the original locators by a proper deed
of conveyance.    Defendant introduced no evidence whatever
to rebut the testimony given on behalf of plaintiff tending
to show a valid location of the ground in controversy as the
Silver King claim.    The case was taken under advisement,
and thereafter the court found and decided that the location

of the Silver King claim was good and valid, and vested in
the locators the title to said claim and to the area in conflict
with the High Roller; and that the deed which had been
rejected when offered in evidence vested an equitable title
in plaintiff company to the Silver King claim and the
ground in dispute; and that plaintiff company was "in pos-
session and working said mining claim when" defendant's
grantors located the High Roller claim; and that said area in
conflict at that time "was not vacant or unoccupied mineral
land of the United States," and that the High Roller location
is invalid. The findings conclude as follows: "That because
said deed executed by T. W. Kirkman, T. J. Kirkman, and
George Kirkman did not pass the legal title to said Silver King
Mining Claim, owing to the non-existence of said corporation
at the time of its execution, the plaintiff is not entitled to
prosecute this adverse proceeding, nor to the relief prayed
for in its complaint; that the defendant is not entitled to the
relief prayed for in its cross-complaint; and that both the
complaint and cross-complaint should be dismissed, and that
each party should pay their own costs, and the costs of court
should be equally divided." A decree was entered accord-
ingly, from which both parties have appealed to this court.

Plaintiff assigns as error the rejection of the deed to the
Santaquin Mining Company and the court's ruling sustaining
defendant's motion for a nonsuit. Defendant's principal as-
signment is that the court erred in holding finally that the
deed in question was valid, and vested the title to the Silver
King claim in plaintiff, and in holding that the location of
the High Roller claim was invalid. We think it is clear
that the learned judge below erred in rejecting the deed of-
fered by the plaintiff to prove itself the successor to the
title of the original locators. A paper purporting to
be a deed was made, signed, acknowledged, and placed
on the public records before the grantee therein named
(the plaintiff) had become a corporate entity. The paper

25 Utah—19

was delivered to one W. H. West, with directions to deliver it to the Santaquin Mining Company when it should be incorporated. After the incorporation, W. H. West, delivered it, pursuant to directions, to J. A. West, the secretary of the company. It then took effect. It became *eo instanti* a deed, and it then had every requisite required by law. Prior to the instant of delivery it may be conceded that it was a nullity so far as vesting the title to the premises was concerned. But no effect is claimed for it prior to the time of its delivery to the corporation. It will surely be conceded that if, after the incorporation of the plaintiff company, W. H. West, who had possession of the deed, had required the Kirkmans to write another one, sign and acknowledge it, and give it to him, and he had then delivered this new instrument to J. A. West for the company, that it would have been a valid deed. And will it not be as readily conceded that, if one who has agreed to convey certain land to a corporation to be formed should, before its actual existence, write, sign, and acknowledge a paper in form a deed, designating as grantee the name under which the corporation afterwards receives its charter or certificate, that when the company should finally become a corporate entity, he might deliver this paper to it, and thereby vest in it a good title from the moment of delivery? Is not the delivery the very essence of the transaction? Would it not be demanding a perfectly useless ceremony to require the owner of the premises to write, sign, and acknowledge another instrument to the same purport? Clearly, such a proceeding would savor strongly of the nonsensical. No authority is produced, for doubtless none exists, which regards the time of writing or signing a deed as the test of its validity, to the utter disregard of the time of delivery. The cases cited by counsel objecting to the deed are cases of instruments bearing the names of persons deceased at the time of the preparation of the instruments. Such instruments are not deeds, for the simple reason that they have never been, and, in the nature of things, never

could have been, delivered.   The point is too plain to require elaboration.

The claim that the instrument was delivered when put into the hands of W. H. West with instructions to deliver it to the company when formed, is wholly untenable. This was but a part of the act of delivery, which was not completed, manifestly, until J. A. West, the company's secretary, accepted the instrument from W. H. West in behalf of the corporation.   There can be no delivery of a deed without acceptance, and no acceptance without the existence of some person or entity with capacity to accept, and when W. H. West received the deed the corporation was not in existence.   Under such circumstances the fact that the persons named as grantors here placed the instrument on the public records cannot be considered a delivery.   3 Washb. Real Prop., 310-312.   See the following authorities in support of our conclusions:   Spring Garden Bank v. Hurlings Lumber Co., 32 W. Va. 357, 9 S. E. 243, 3 L. R. A. 583; 3 Washb. Real Prop., 300; Wharf Co. v. Judd, 108 Mass. 227.   Both upon reason and authority we think it is established that the deed offered by plaintiff was prima facie a valid instrument that vested the title of the original locators of the Silver King claim in the plaintiff company, and it should have been admitted in evidence.

Plaintiff contends that we should direct a decree in its favor; defendant, that we should grant a new trial of the cause.   To direct a decree in favor of plaintiff would be equivalent to an ex parte decision of the case upon the merits; for while the lower court has found the location of the Silver King to have been valid, and the High Roller to have been an invalid location, and that the area in controversy is the property of the plaintiff, still the finding that plaintiff has title to the ground is based upon evidence which was offered only, but which was not received.   It is fair to presume that defendant at least desired to controvert the plaintiff's evidence of its succession to the title of the

locators of the Silver King, but by the ruling of the court refusing to admit the deed in evidence defendant was clearly excused from showing anything against the validity of the deed.  It was not, of course, concluded by the prima facie evidence which entitled the deed to be read in evidence.  It is very clear that, where a party properly omits to introduce testimony because the court has ruled that the plaintiff has not proved a case, a new trial should be granted, if, upon subsequent reflection, the court enters findings which are inconsistent with the rulings at the trial, and are based upon points upon which the adverse party has not been heard.  14 Enc. Pl. and Prac., p. 745; Parks v. Nichols, 20 Ill. App. 143. Here the court held at the trial that upon its own showing plaintiff had no title, and then, when defendant, manifestly relying upon the ruling, omitted to controvert plaintiff's showing, the court found the deed to have some effect, although, technically speaking, it had never been read by the court.

The decree entered below is set aside, and a new trial granted.  Costs of this appeal are awarded to the plaintiff.

BASKIN, C. J., and BARTCH, J., concur.