## BEGGS et al. v. MYTON CANAL & IRRIGATION CO. et al.

No. 3328. Decided March 21, 1919. (179 Pac. 984.)

1. CORPORATIONS—DISPOSITION OF CORPORATE PROPERTY—RATIFIED SALE BY DIRECTORS—STATUTE. Under Comp. Laws 1907, section 322 (Comp. Laws 1917, section 869), the proviso of which is not limited to mining companies, all corporations in Utah through their directors and on confirmation by a vote of a majority of stockholders may dispose of the corporation property, when such disposition is not provided for in the articles of incorporation; when the articles of incorporation provide the property may be sold by the directors or by the stockholders, sales so made will be binding on the corporation. (Page 124.)

2. CORPORATIONS—FAILING CORPORATIONS—DISPOSITION OF PROPERTY. Failing or unsuccessful corporations may sell and dispose of their property, providing the transactions are not in fraud of the rights of creditors. (Page 124.)

3. CORPORATIONS—FAILING CORPORATIONS—DUTY OF DIRECTORS AND STOCKHOLDERS—TRANSFER OF ASSETS. Where irrigation company was in failing condition and in danger of losing its water filings and other rights, it was not only within power of directors and majority stockholders to make arrangement with third person involving transfer of company's property to a corporation organized by him, which would save something to the stockholders, but it was their duty so to do. (Page 126.)

4. CORPORATIONS—DEED ·TO COMPANY NOT FORMED. A deed executed by one company to another before the incorporation of the grantee company was not for that reason invalid.[1] (Page 128.)

5. CORPORATIONS — STOCKHOLDERS' MEETING — FORM OF NOTICE — WAIVER OF RIGHT ·TO OBJECT. Stockholders who, pursuant to notice, were present in person or by proxies at a meeting called to ratify a sale of the assets of the company by the directors, are not in a position to object to the form of notice of the meeting.[2] (Page 128.)

---

[1] *Santaquin Mining Co.* v. *High Roller Mining Co.*, 25 Utah, 282, 71 Pac. 77.

[2] *Smith* v. *Knauss*, 52 Utah, 614, 176 Pac. 621.

Appeal from the District Court of ·Duchesne County,·
Fourth District; *Hon. A. B. Morgan,* Judge.

Suit by C. ˌT. Beggs and others against the Myton Canal &
Irrigation Company and others.

Decree for defendants.  Plaintiffs appeal.

AFFIRMED.

*C. J. Wahlquist* of Myton and *Millard Fairlamb* of Delta,
Col., for appellants.

*D. H. Thomas* of Salt Lake City, for respondents.

WEBER, J.

Plaintiffs brought suit against the defendants for the pur-
pose of annulling a contract entered into between defendant
Myton Canal & Irrigation Company, a corporation, and S. Y.
Taylor, another of the defendants, and for the purpose of set-
ting aside a deed conveying certain water filings and other
property to the defendant Uinta Basin Construction Com-
pany, a corporation.

The Myton Canal & Irrigation Company was incorporated
in November, 1910, under the general incorporation laws of
Utah, for the purpose of acquiring rights to the use of water
from the Duchesne river, Wasatch county, Utah, to build and
maintain reservoirs and canals, and to do all things necessary
for the distribution to the stockholders of water acquired by
the corporation, and to do other things incidental to the
above-named purposes.  At the time of incorporation it had
no assets except certain water filings, some uncompleted
ditches and plats and surveys, all of which were accepted in
payment of the larger portion of the stock subscription.  The
original capitalization was $50,000, which was afterwards in-
creased to $100,000, the par value of the stock being $10 per
share, and the total number of outstanding shares being

$6,383^2/_8$. After incorporation considerable work was done by the company, and about 6 miles of canal was completed, but practically no construction work has been done since 1914. In 1917 the company was about to lose its water filings because the work required by law had not been done, and when, pursuant to the statutes of this state, an application for an extension was made to the state engineer, he granted such extension after being advised of a proposed contract with said S. Y. Taylor and of the fact that the property of the Myton Canal & Irrigation Company would be conveyed to the Uinta Basin Construction Company, a proposed corporation, and that the latter would be able to procure the necessary funds with which to proceed with the contemplated work. As a part of the canal system there was in contemplation the enlargement of the Gray Mountain ditch owned by the United States and used for carrying water for the Indians, the enlarged canal to be in part used for conveying water secured and covered by the water filings of the Myton Canal & Irrigation Company. The United States had given permission to the Myton Canal & Irrigation Company to carry water through that ditch after enlargement of same by the defendant corporation. The permission to enlarge the ditch imposed the condition that the work be done and completed during the years 1912, 1913, and 1914. The work was not being done because the Myton Canal & Irrigation Company had no money. Consequently the right of enlargement expired. An application made in 1916 for an extension of time to enlarge the ditch was denied because the Myton Canal & Irrigation Company was considered to be financially irresponsible. During 1917 another application was made by the Myton Canal & Irrigation Company to the government for permission to enlarge said ditch, and after an investigation the government granted permission upon assurance being given that the sale hereinafter mentioned would be made, and that the defendant Uinta Basin Construction Company would be able to procure the means with which to enlarge the government ditch. The permission was granted with the understanding that the Uinta Company would enlarge the ditch

and would procure the funds with which to carry on the work. During 1917 the directors of the Myton Canal & Irrigation Company entered into negotiations with Mr. S. Y. Taylor, one of the defendants herein, and an agreement was entered into on September 19th of that year by which the said company agreed to transfer its water filings and other rights to Taylor, who promised to organize a corporation, afterwards called the Uinta Basin Construction Company. He further agreed that he would cause the proposed corporation to commence and prosecute the work of enlarging the Gray Mountain Canal so that the canal could be used by December 31, 1918, and that the canal and irrigation system be extended across the South Myton Bench ready for delivery of water to land lying thereunder on or before December 31, 1919, and, further, that the project would be completed to the extent that it would deliver water to a minimum of 13,000 acres of land on or before December 31, 1921. It was further agreed between the parties that the corporation might pledge and mortgage the assets transferred to it to secure a bond issue of $250,000, that the bonds should be issued as rapidly as money was required for completion of the irrigation project, and that the contracts for water were to be delivered to the trustee, and that in payment for the rights by it transferred the Myton Canal & Irrigation Company would receive water contracts in good standing of such value that the aggregate amount of unpaid installments of principal, plus accrued and unpaid interest, should equal the sum of $58,275, plus the earned and unpaid 6 per cent. interest thereon, the interest to be payable annually. It was further agreed that, if the purchaser should fail to prosecute and complete the construction of the project within the time agreed upon, or should abandon the work, the properties and assets transferred should be reconveyed to the vendor or its assigns.

The foregoing contains the parts of the contract essential for an understanding of this case. After this contract was executed a meeting of the stockholders was called for October 6, 1917. The meeting was held pursuant to written notice mailed to the stockholders and of the outstanding 6,383²/₈

shares of the Myton Canal & Irrigation Company there were represented in person and by proxy 5,908 shares, of which $5,408^3/_8$ shares were voted in favor of ratification of the contract above mentioned and $499^5/_8$ shares against ratification. Thereafter another meeting was held pursuant to notice, and it was then agreed by a majority of the stockholders that the clause providing for annual payment of interest be eliminated and the interest was made payable at the time the entire principal became due instead of annually, as provided in the original contract.

The case was tried in the district court of Duchesne county, and the issues found against plaintiffs, the minority stockholders of the Myton Canal & Irrigation Company. A decree was entered declaring the contract with Taylor to be valid, and the deed to the Uinta Basin Construction Company to be valid and binding upon the Myton Canal & Irrigation Company and its stockholders. Plaintiffs appeal, and assign numerous errors.

It is contended that the contract with Taylor was ultra vires, and that the corporation had no power to sell and dispose of its property, and it is insisted that the statutory law of Utah forbids the transaction complained of in this case.         1, 2

Comp. Laws Utah 1907, section 322 (Comp. Laws Utah 1917, section 869), reads as follows:

"The corporation in its name shall have power to make all contracts necessary and proper to effect its purposes and conduct its authorized business; to sue and be sued; to have a seal, which it may alter at pleasure; to buy, use, mortgage, sell or otherwise dispose of personal property; to buy, receive, use, sell, mortgage, lease, or bond, or otherwise dispose of all such real estate as may be necessary, useful, or desirable for it to own, use, or dispose of for its purposes. Such corporation shall have the right to disburse out of profits actually earned and on hand such dividends, from time to time, as the directors may deem prudent. It may make all such by-laws, rules and regulations, not inconsistent with law or with other corporate rights and vested privileges, as may be necessary to carry into effect the object of the association, and such by-laws, rules, and regulations may be made in a general meeting of the stockholders or the board of directors. And any corporation now existing, or that hereafter may be organized under

the laws of this state for the purpose of mining, or the exploration or development of mining property, including lands bearing metal, stones, limestone, oil, petroleum, asphalt, and other hydrocarbons, shall, in addition to the powers above enumerated, have the power to purchase, take on bond or lease, or in exchange, or locate, or otherwise acquire any lands, mines, options, territory, fields, or claims, and to sell, convey, lease, bond, mortgage, dispose of, or otherwise deal in the same to such extent as the board of directors may deem prudent, subject always to the provisions of the articles of incorporation and by-laws, provided, that in case the articles of incorporation do not provide for the sale or other disposition of the property of the corporation, then the act of the board of directors shall not be valid or binding on the corporation until confirmed by a vote of a majority in amount of the stock outstanding at a meeting of the stockholders duly called to consider such action of the board. When the articles of association provide that the property of the corporation may be sold, mortgaged, or otherwise disposed of by the directors or by the stockholders, sales made in accordance therewith shall be binding on the company."

Plaintiffs' counsel argues that the part of the section above quoted commencing with the word "provided" applies to mining corporations only, and his conclusion is that, unless given express authority by the articles of incorporation, other corporations have no power to sell and dispose of their property except with the consent of all the stockholders.

In our opinion counsel's argument is not tenable. The word "provided" has no special significance, as used in this case, and does not make what follows a proviso applying only to what is said of corporations organized for mining purposes. Considering the section as a whole, the manifest legislative intent is that all corporations in this state may, through their directors and upon confirmation by a vote of a majority in amount of the outstanding stock, dispose of the corporate property when such disposition is not provided for in the articles of incorporation. And when the articles of incorporation provide that the property of the corporation may be sold by the directors or by the stockholders sales made in accordance with such provision will be binding upon the corporation. Whether such corporation be organized for mining purposes, or for other purposes, under the general incorporation laws of the state, our statute gives private corporations

the power to sell and dispose of their property upon confirmation by the majority in amount of the outstanding stock. No further authority need be invoked in this case. The rule, however, is well settled that failing or unsuccessful corporations may sell and dispose of their property provided the transactions are not in fraud of the rights of creditors.

In 3 Thompson, Corporations (2d. Ed.) section 2429, the rule under which private corporations may sell and dispose of their property by absolute conveyance is stated as follows:

"First. Private corporations, when expressly authorized by statute, charter, or by-laws, may sell and dispose of all the corporate property.

"Second. Private corporations by the unanimous consent of all stockholders, in the absence of express prohibition, may sell and dispose of all the corporate property.

"Third. The directors and managing officers have the power to dispose of all the property where the governing statute provides that private corporations may sell their entire property.

"Fourth. Where the corporation is in failing circumstances or is in fact insolvent, the directors and managing officers may dispose of all the property, or make an assignment of all the corporate property for the benefit of creditors.

"Fifth. The majority stockholders may alienate all the corporate property when expressly authorized by statute, charter, or by-laws.

"Sixth. The majority stockholders, even as against the protest of the minority, may dispose of all the property when the corporate business has become unprofitable, and where it would be ruinous to the corporation and the stockholders to continue the business, or when there are insufficient funds to continue the business and no money with which to pay existing indebtedness, or where the corporation is in failing circumstances or is in fact insolvent."

See, also, same author, section 2424; 2 Fletcher Cyc. Corp. sections 1187, 1207; 7 R. C. L. 559; 10 Cyc. 1138.

In the case at bar neither bad faith nor deceit were proved by the plaintiffs. The evidence affirmatively shows good faith and honesty and probably good judgment by the directors of the company in making the Taylor contract, as also by the majority of the stockholders in ratifying the same. Apparently there was nothing for them to do save to dispose of the company's canal and ditch rights to the best possible advantage. The company was devoid of

funds; its treasury stock was unsalable; unless it could convince state and federal officials that it had the financial ability to proceed with its project, it could obtain no extension of time in which to continue and complete its plans and work. It could not furnish the required proof of financial strength; to save its water filings and other rights it was necessary to obtain financial assistance; the loss of the entire property was imminent; the proposed contract with Taylor offered hope and promise of saving a substantial sum to the stockholders. Under these circumstances it was not only within the power of the directors and the majority stockholders, but it was their duty, to take some action which in their judgment would avoid the threatened loss and wreckage. Such actions are being taken by failing and unsuccessful corporations all the time everywhere. With a depleted treasury, unsalable treasury stock, money in large quantities necessary to proceed with the plans and purposes of the corporation, what could the company do? Should directors and stockholders stand idly by and witness the complete collapse of the corporation and the entire loss of its property, or should they make such efforts and take such action as in their judgment will result in prevent loss and damage to the stockholders? And when the directors and shareholders, representing more than two-thirds of the outstanding stock of a company, enter into such contract for the disposition of the corporate property as to them seems reasonable and fair and the best that can be done for the corporation under the circumstances, courts should not and will not set aside nd vacate the only plan that seems to promise relief to the stockholders, though some of the latter may doubt the wisdom of the course determined upon by the majority.

The district court in this case found that the sale made to Taylor was fair and just to the Myton Canal & Irrigation Company, and that it was for the best interests of all its stockholders. This finding is in harmony with the evidence. The findings made are supported and justified by the evidence. We do not see how the district court could have found otherwise, and we approve its findings of fact and conclusions of law and the decree in favor of the defendants.

One of the assignments of error made by the plaintiffs is that the deed executed by the Myton Canal & Irrigation Company conveying the company's property to the Uinta Basin Construction Company is invalid for the reason that it was executed before the incorporation of the last-mentioned company.

This identical question was decided adversely to counsel's contention in *Santaquin Mining Co.* v. *High Roller Mining Co.*, 25 Utah, 282, 71 Pac. 77.

The notice of the stockholders' meeting is criticized by plaintiffs' counsel as being insufficient to give the stockholders due and legal notice of the purpose of the meeting.

We regard the notice given to the stockholders of the Myton Canal & Irrigation Company as sufficient, and are of the opinion that it contained no substantial defects. In any event those whose stock was represented at the meeting are not in a position to object to the form of notice.

In 7 R. C. L. 315, it is said:

"Strict statutory requirements as to notice of a meeting of stockholders of a corporation, being intended for their protection, may be waived by them, and, if waived, the meeting and all its proceedings are as valid as if full statutory notice had been given. The provisions of a statute that notice of a meeting to elect directors 'shall' be given by mail to subscribers of stock is directory merely, and, if they all agree thereto, may be waived. As a general rule, if the persons entitled to notice of a corporate meeting actually attend it and participate in the business there transacted, it is immaterial whether the notice was given in the manner prescribed by statute."

See, also, *Smith* v. *Knauss*, 52 Utah, 614, 176 Pac. 621.

There are other assignments of error which have received our careful consideration, but we do not regard them as having sufficient merit to warrant discussion.

It follows that the judgment of the district court should be affirmed, with costs to defendants.

It is so ordered.

CORFMAN, C. J., and FRICK, GIDEON and THURMAN, JJ., concur.