2011 UT App 188

**INTERSTATE INCOME PROPERTIES, INC.; a Utah corporation; and BRB–5 A, LLC, a Utah limited liability company, Plaintiffs and Appellees,**

v.

**LA JOLLA LOANS, INC.; KVB Enterprises, Inc.; Thomas L. Black; and Wilma J. Black; et al., Defendants and Appellants.**

No. 20100025–CA.

Court of Appeals of Utah.

June 9, 2011.

Bryce D. Panzer and Brett N. Anderson, Salt Lake City, for Appellants.

Stephen Quesenberry and Aaron R. Harris, Provo, for Appellees.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## OPINION

McHUGH, Associate Presiding Judge:

¶1 Defendant La Jolla Loans, Inc. (La Jolla) appeals from the trial court's ruling that its trust deeds, to the extent that the deeds created encumbrances on the property of Plaintiff Interstate Income Properties (Interstate), are null and void; and that such trust deeds are wrongful liens pursuant to Utah Code sections 38–9–1 to –7 (the wrongful lien statute), *see* Utah Code Ann. § 38–9–1 to –7 (2005 &. Supp.2010). La Jolla also appeals the trial court's award to Interstate for its costs and attorney fees incurred in nullifying the liens. We remand to the trial court for clarification of the legal basis of its decision and entry of the factual findings necessary to show that its conclusions are supported by the evidence.

## BACKGROUND

¶2 In 1988, Robert and Barbara Busch (collectively, the Busches) incorporated BE2, Inc., which they later named Interstate. The Busches and their son-in-law, D. Gregory Hales, were the directors of Interstate. Around 1994, Interstate obtained a parcel of property it referred to as Pad A.

¶3 On September 1, 1997, the Busches signed articles of organization for BRB–5, a limited liability company organized to engage in real estate development and real estate investments. The Busches were listed in the articles as both members and owners of BRB–5. On October 22, 1997, Barbara Busch, the sole shareholder and vice president of Interstate, signed a quitclaim deed purporting to convey Pad A to BRB–5 (the 1997 Deed), but BRB–5 was not yet in existence because the articles of organization had not been filed with the Utah Division of Corporations (the Division). Barbara Busch did not expressly indicate on the face of the 1997 Deed that she was signing it in a representative capacity for Interstate. Two days after executing the 1997 Deed, on October 24, 1997, the Busches had the 1997 Deed recorded and the articles of organization for BRB–5 filed with the Division.[1]

¶4 In 2006 and 2007, respectively, Hales organized Carlsbad Development, LLC (Carlsbad I) and Carlsbad Development II,

---

1. The record evidence does not indicate which event—the recording of the deed or the filing of the articles of organization—occurred first in time on October 24, and the parties have been unable to point us to any evidence on that question.

LLC (Carlsbad II). Hales was the sole manager of both Carlsbad I and Carlsbad II. On May 10, 2007, while purporting to be an authorized vice president of Interstate, Hales signed a quitclaim deed purporting to transfer Interstate's interest in Pad A to Carlsbad I (the 2007 Deed). Subsequently, Hales, acting on behalf of Carlsbad I and II, executed two deeds of trust in favor of La Jolla, pledging Pad A as collateral to secure a $3,245,000 loan. At La Jolla's request, the deeds of trust were recorded against the property.[2]

¶ 5 On May 4, 2009, Interstate and BRB–5 (collectively, Plaintiffs) filed a complaint seeking to quiet title to Pad A in BRB–5. On June 5, 2009, Plaintiffs filed a petition to nullify the trust deeds on the ground that they were wrongful liens against the property. Plaintiffs argued that Pad A had been validly conveyed from Interstate to BRB–5 by the 1997 Deed before Hales fraudulently executed the 2007 Deed, which attempted to convey the same property from Interstate to Carlsbad I. Plaintiffs claimed that because Interstate no longer had any interest in Pad A to transfer, Carlsbad I never obtained an interest in Pad A and could not use it to secure the loan from La Jolla. Therefore, the Plaintiffs sought to have the trust deeds nullified as wrongful liens.

¶ 6 In opposition, La Jolla asserted that the conveyance from Interstate to BRB–5 was invalid "because the [1997 D]eed was not properly signed or acknowledged, and because the entity to which title was being conveyed did not, in fact, exist at the time of the instrument." La Jolla also argued that Hales had both actual and apparent authority to convey Pad A to Carlsbad I on behalf of Interstate and had properly executed the

2007 Deed as its representative. Because it claimed that the 1997 Deed was ineffective to transfer Pad A, La Jolla claimed that the 2007 Deed transferred the property to Carlsbad I, thereby making the trust deeds enforceable.[3] As another basis for its opposition to the petition to nullify the trust deeds as wrongful liens, La Jolla argued that BRB–5 had been dissolved two years before the petition was filed and that the nullification action was not consistent with the powers remaining with a defunct organization in winding up its affairs. *See* Utah Code Ann. § 48–2c–1203 (2007) (governing post-dissolution activities).

¶ 7 Plaintiffs replied to La Jolla's opposition memorandum, asserting that the 1997 Deed was valid. Specifically, they argued that Barbara Busch had the requisite authority to transfer Pad A from Interstate to BRB–5 because she had actual authority to do so as a director of Interstate, rendering her failure to sign in a representative capacity immaterial. Plaintiffs further asserted that all of the requirements for a valid quitclaim deed as set forth by Utah Code section 57–1–13, which does not mandate the inclusion of the official title of the agent who executes the deed, were met. *See id.* § 57–1–13 (2010). Thus, Plaintiffs argued that the 1997 Deed was entitled to the presumption set forth in Utah Code section 57–4a–4(g) that Barbara Busch had the authority to execute it.[4] With respect to La Jolla's argument that the transfer was invalid because BRB–5 had not yet been formed at the time Barbara Busch executed the 1997 Deed purporting to transfer Pad A to BRB–5, Plaintiffs argued that the transfer constituted business "incidental to [BRB–5's] organiza-

---

2. The deeds of trust also pledged two other unrelated properties as collateral.

3. Although La Jolla also filed a trial brief, we are unable to review it because it is missing from the record.

4. Utah Code section 57–4a–4(g) provides:
   A recorded document creates the following presumptions regarding title to the real property affected:
   . . . .
   > (g) a person executing a document as an agent, attorney in fact, officer of an organization, or in a fiduciary or official capacity:

> (i) held the position he purported to hold and acted within the scope of his authority;
> (ii) in the case of an officer of an organization, was authorized under all applicable laws to act on behalf of the organization; and
> (iii) in the case of an agent, his agency was not revoked, and he acted for a principal who was neither incompetent nor a minor at any relevant time.

Utah Code Ann. § 57–4a–4(g) (2010).

tion," which could be conducted before filing the articles of organization pursuant to Utah Code section 48–2c–404. *See id.* § 48–2c–404 (2007). In the alternative, Plaintiffs claimed that, although not yet formed by the filing of its articles of organization, "BRB–5 was a legitimate artificial person that was capable of taking and holding Pad A."

¶ 8 On August 17, 2009, the trial court held an evidentiary hearing on the petition to nullify La Jolla's trust deed as a wrongful lien, during which it heard the testimony of witnesses for each side and received documentary evidence. At the conclusion of the hearing, the parties reiterated and refined their respective positions in closing argument. With respect to Barbara Busch's execution of the 1997 Deed, Plaintiffs again argued that, once recorded, the deed was entitled to a presumption that Barbara Busch's execution was valid, including that she was authorized to act as Interstate's agent. In response, La Jolla asserted that the application of Utah Code section 57–4a–4(g) was limited to situations in which the person executing the deed actually signs as an agent of the entity, which Barbara Busch did not do. La Jolla claimed that, unlike the 1997 Deed signed by Barbara Busch in her individual capacity, Interstate's 2007 Deed to Carlsbad I was entitled to the section 57–4a–4(g) presumption because Hales did execute it as the agent of Interstate. La Jolla also refuted Plaintiffs' contention that the 1997 Deed constituted preformation activity based upon its analysis of the cases defining the limits of such activities. Because it viewed the 1997 Deed as invalid, La Jolla further claimed that BRB–5 was not a "record title holder" with standing to assert a wrongful lien claim. *See* Utah Code Ann. § 38–9–7 (2005) ("Any record interest holder of real property against which a wrongful lien ... has been recorded may petition the trial court ... to nullify the lien."); *id.* § 38–9–1(4)(a) (Supp.2010) (" 'Record interest holder' means a person who holds or possesses a present, lawful property interest in certain real property, including an owner, titleholder, mortgagee, trustee, or beneficial owner, and whose name and interest in that real property appears in the county record-

er's records for the county in which the property is located.").

¶ 9 Upon completion of closing arguments, the trial court asked some questions concerning the parameters of preformation activities and the application of the wrongful lien act. The trial court then stated its ruling from the bench, which we quote in its entirety:

> All right. I have determined that the— they should be declared void ab initio. Property should be—the property should be released from these liens. Pursuant to the statute, I do not think I have an alternative but to award costs and fees. However, I do decline to award the statute that—the penalty that's provided by statute. I think that knowledge or reason to know is not quite the situation here and so I don't—I don't think that that's applicable many [sic].

The trial court asked counsel for Plaintiffs to take the lead in drafting the written version of the order.

¶ 10 On September 29, 2009, the trial court entered an Order Re: Plaintiffs' Petition To Nullify Wrongful Lien (Order), which was approved as to form by Interstate, BRB–5, and La Jolla. The Order states, in relevant part:

> 3. On October 22, 1997, Interstate Income Properties, Inc. Transferred Pad A, by Quit–Claim Deed, to an entity named BRB–5, LLC.
>
> 4. This Quit–Claim Deed satisfied the statutory requirements of U.C.A. § 57–1–13 and was signed by Interstate's authorized agent.
>
> 5. The October 22, 1997 Quit–Claim Deed transferred all of Interstate's interest in Pad A to BRB–5, LLC.
>
> 6. This Quit Claim Deed was properly recorded on October 24, 1997 at the Salt Lake County Recorder's Office.

The Order then declares the subsequent trust deeds securing the loans from La Jolla to Carlsbad I and Carlsbad II null and void ab initio. The trial court also awarded Interstate costs and reasonable attorney fees in the amount of $26,212.50. On December 9, 2009, the trial court entered the final judg-

ment on the Order, from which La Jolla now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 La Jolla challenges the trial court's determination that Interstate validly conveyed Pad A to BRB–5, that La Jolla's deeds of trust were wrongful liens, and that the trust deeds had no effect from the time they were created. We review the trial court's legal conclusions for correctness, *see Houskeeper v. State*, 2008 UT 78, ¶ 18, 197 P.3d 636, and review the factual findings supporting its legal conclusions for clear error, *see* Utah R. Civ. P. 52(a).

¶ 12 La Jolla further argues that the trial court failed to make adequate findings of fact to support its decision to nullify the lien or to award costs and attorney fees to Interstate. We review this issue only if it was presented to the trial court in such a way that the trial court had an opportunity to correct any deficiencies in the adequacy of the detail of the findings of fact. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. However, where the inadequacy of the trial court's findings of fact and conclusions of law results in our inability to ascertain the basis of the trial court's decision, the appellate court is prevented from effectively reviewing the trial court's decision and may remand for the entry of more-detailed findings. *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 28, 70 P.3d 35.

## ANALYSIS

I. The Trial Court Is Required To Make Findings of Fact and Conclusions of Law that Are Adequate To Set Forth the Basis of Its Decision.

¶ 13 "In all actions tried upon facts without a jury ..., the court shall find the facts specifically and state separately its conclusions of law thereon...." Utah R. Civ. P. 52(a).[5] While the findings of fact and conclusions of law may be stated orally on the

record, *see id.*, they must be made on all material issues raised by the pleadings unless the facts in the record are uncontroverted, *see Hill v. Estate of Allred*, 2009 UT 28, ¶ 59, 216 P.3d 929 ("Failure of the trial court to make findings on all material issues is reversible error." (internal quotation marks omitted)); *State v. 633 E. 640 N.*, 942 P.2d 925, 931 (Utah 1997) ("Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of judgment." (internal quotation marks omitted)). Here, the petition to nullify the wrongful lien was tried upon facts without a jury, and findings of fact and conclusions of law were required.

II. The Trial Court Failed To Make Adequate Findings of Fact.

¶ 14 During the evidentiary hearing, the trial court heard the testimony of witnesses and received documentary evidence, which, having been admitted by the trial court, presumably was relevant to the legal arguments asserted. Yet, the trial court's Order, to the extent that it includes factual findings, does not "disclose the steps by which the ultimate conclusion on each factual issue was reached." *See 633 E. 640 N.*, 942 P.2d at 931 (internal quotation marks omitted). As a result, we are unable to ascertain whether the trial court's Order "follows logically from, and is supported by, the evidence." *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 231 (Utah 1995) (internal quotation marks omitted).

¶ 15 Furthermore, the issues in this matter were joined on a number of legal theories, any one of which is dependent upon a particular set of factual findings. Because the trial court did not identify the legal theory upon which relief was granted on each of the material issues raised, we are unable to determine precisely what factual findings are needed to support the trial court's ultimate conclusions

---

5. Although the trial court need not enter findings of fact and conclusions of law in rulings on motions other than involuntary dismissal, the trial court must "issue a brief written statement

of the ground for its decision" on certain enumerated motions "when the motion is based on more than one ground." *See* Utah R. Civ. P. 52(a).

or to ascertain whether those conclusions are correct. *See id.* at 232 (holding that the challenged factual finding was insufficient because it did "not make clear, and [the appellate court could not] tell from [its] reading of the record, upon what legal ground" it was based).

■ ¶ 16 Our difficulty can be illustrated by La Jolla's argument that the 1997 Deed from Interstate to BRB–5 was invalid, which is based on the alternative grounds that BRB–5 had not been legally formed as of the date of the deed, which La Jolla argues is also the date of delivery, and that the 1997 Deed was not properly executed by a person with the requisite authority. With respect to that issue, the trial court determined, "This Quit–Claim Deed [the 1997 Deed] satisfied the statutory requirements of [Utah Code section] 57–1–13[, which provides examples of the form of a quit claim deed,] and was signed by Interstate's authorized agent . . . [and] transferred all of Interstate's interest in Pad A to BRB–5, LLC." As a result, the trial court concluded that the subsequent attempt to transfer Pad A from Interstate to La Jolla was invalid, presumably because Interstate no longer had any interest in Pad A to convey. *See id.* at 233 ("The mere possession of a warranty deed does not prove title to anything, especially if the grantors do not own what they purport to convey."). However, there is nothing in the trial court's decision, or that can be gleaned from the record, to indicate the basis of its determination that the 1997 Deed signed by Barbara Busch in her individual capacity validly conveyed Pad A to an entity not yet formed. As a result, we are unable to engage in an effective review of the issues raised by this appeal without further explanation from the trial court. Where our appellate function cannot be performed due to the inadequacy of the trial court's decision, we may remand for the entry of additional findings of fact and conclusions of law explaining the legal basis of its decision and showing that the evidence supports that conclusion. *See Armed Forces Ins. Exch.,* 2003 UT 14, ¶ 28, 70 P.3d 35 ("[R]emand is necessary where the appellate court cannot get a clear understanding of the basis of the trial court's judgment from its findings." (quoting 5 Am.

Jur.2d *Appellate Review* § 688 (1995))); *Gabriel v. Salt Lake City Corp.,* 2001 UT App 277, ¶ 10, 34 P.3d 234 (remanding for further findings where trial court did not explain the basis of its decision).

¶ 17 While we understand the dissent's urge to resolve matters efficiently and recognize that our trial courts are faced with heavy demands on their limited time and resources, this is not a case in which we can, even with diligent effort, discern with any degree of comfort the thought processes of the trial judge. Unlike the dissent, we are unable to tell whether the trial court's decision is " 'adequately supported by the evidence.' " *Infra,* ¶ 27 (quoting *In re K.F.,* 2009 UT 4, ¶ 62, 201 P.3d 985).

■ ¶ 18 The trial court may have based its decision on a determination that delivery of the deed did not occur until the articles of organization were filed and BRB–5 was legally formed. To do so, it would have had to engage in a two-part inquiry identified by this court in *Kelly v. Hard Money Funding, Inc.,* 2004 UT App 44, 87 P.3d 734. "First, the court must determine whether the grantor's intended grantee is readily identifiable. Second, the court must then determine whether that grantee is a living person or existing legal entity that is capable of holding title." *Id.* ¶ 23 n. 5. The critical date for purposes of the capacity to hold title is the date of delivery. *See Beggs v. Myton Canal & Irrigation Co.,* 54 Utah 120, 179 P. 984, 987 (1919) (rejecting the argument that a deed was invalid despite the fact that it was executed before the grantee corporation had been formed); *Santaquin Mining Co. v. High Roller Mining Co.,* 25 Utah 282, 71 P. 77, 80 (1903) (relying on the fact that the grantor gave the executed deed to a third party with instructions to deliver it when the grantee corporation was formed in rejecting a challenge to the deed on the basis that it conveyed property to a nonexisting entity).

¶ 19 However, the trial court might have instead accepted Interstate's argument that the transfer of Pad A to BRB–5 was a valid preformation activity. While either of these legal theories could support the trial court's ultimate conclusion that the transfer from

Interstate to BRB–5 was valid, each rests upon the finding of a different set of operative facts. Furthermore, while either theory implicates La Jolla's arguments concerning Barbara Busch's authority to execute the 1997 Deed and the effect of her doing so individually, there is no indication of the basis of the trial court's apparent rejection of those defenses, or other material issues raised by the pleadings.[6] We are unwilling first to identify a legal theory under which the trial court's decision could be affirmed and then to comb the record in an attempt to put together findings of fact that could support that theory. This is particularly true in a case such as this where the decision turns on the intent of the parties, which is an intensely factual inquiry. *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrim's Landing, LC,* 2009 UT 65, ¶ 73, 221 P.3d 234 ("The intent of the parties involves a question of fact and should be dealt with accordingly."); *RHN Corp. v. Veibell,* 2004 UT 60, ¶ 42, 96 P.3d 935 (" 'The paramount rule of construction of deeds is to give effect to the intent of the parties ... as expressed in the deed as a whole.' " (omission in original) (quoting *Chournos v. D'Agnillo,* 642 P.2d 710, 712 (Utah 1982))).

III. La Jolla's Failure To Preserve Its Objection to the Adequacy of the Detail of the Trial Court's Findings of Fact Does Not Cure the Inadequacy of the Trial Court's Decision for Purposes of Appellate Review.

¶ 20 Our ability to remand to the trial court is not affected by La Jolla's failure to preserve its objection to the adequacy of the trial court's findings of fact and conclusions of law. We agree with our dissenting colleague that La Jolla was required to alert the trial court to the need to make additional findings, to identify the legal basis of its decision, and to decide other material issues raised by the pleadings so that the trial court had an opportunity to correct any defects in

its findings and conclusions. *See In re K.F.,* 2009 UT 4, ¶¶ 60–64, 201 P.3d 985 (reaffirming the Utah Supreme Court's holding in *438 Main Street v. Easy Heat, Inc.,* 2004 UT 72, 99 P.3d 801, that challenges to the adequacy of the detail of the trial court's findings of fact must be presented to the trial court in such a way that the trial court has an opportunity to correct any alleged deficiencies or the challenges are waived). La Jolla did not do so. Nevertheless, La Jolla's failure to preserve its challenge to the adequacy of the detail of the findings of fact does not waive our right to require a meaningful statement of the basis of the trial court's decision and enough factual findings to assure us that the trial court's legal conclusions logically flow from and are supported by the evidence. *See Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 28, 70 P.3d 35. In short, La Jolla's failure cannot be bootstrapped into a determination that the trial court's findings and conclusions are adequate for purposes of appellate review. Despite careful review of the findings of fact and conclusions of law entered by the trial court, as well as the record on appeal, including the trial transcript and the trial court's ruling from the bench, we are unable to get a clear understanding of the basis for the trial court's judgment. *See id.* Therefore, we must seek additional guidance on these issues from the trial judge, who is the only one privy to the thought process supporting the trial court's decision in favor of Plaintiffs. What our decision lacks in judicial economy in comparison with the dissent's approach, we respectfully conclude it gains in certainty that we are actually reviewing the decision that the trial court made based upon the facts it found after weighing all of the evidence.

CONCLUSION

¶ 21 The findings of fact and conclusions of law are inadequate for purposes of appellate review. Therefore, we remand this case to the trial court for the entry of additional

**6.** We also recognize that the materiality of particular issues and, by extension, the need to make findings of fact relating to those issues, depends on the legal basis of the trial court's decision. For example, if the trial court correctly concluded that the 1997 Deed validly transferred Pad A to BRB–5, the authority of Hales to execute the 2007 Deed purporting to transfer the same property to Carlsbad I is not material. Hales's purported authority to act on behalf of Interstate could not give it the ability to transfer property to Carlsbad I that it no longer owned.

findings of fact and conclusions of law to clarify the basis for its decision and to show that its legal conclusions follow logically from and are supported by the evidence.

¶ 22 Reversed and Remanded.

¶ 23 I CONCUR: MICHELE M. CHRISTIANSEN, Judge.

THORNE, Judge, (dissenting):

¶ 24 I respectfully dissent from the majority's decision to remand this case to the trial court for entry of additional facts and conclusions of law to clarify the basis for its decision. Based on the procedural posture of this case, I believe that La Jolla waived its arguments by failing to preserve its objections to the adequacy of the findings and by proceeding as if the trial court's findings and conclusions of law were sufficient to support the trial court's ruling that La Jolla's trust deeds are null and void, and are wrongful liens pursuant to Utah Code section 38-9-1. As a result, remand is inappropriate.

¶ 25 In this case, the trial court ruled from the bench after an evidentiary hearing on Plaintiffs' petition to nullify La Jolla's trust deed as a wrongful lien and requested Plaintiffs' attorney to draft the order. The entirety of the trial court's ruling is as follows:

> All right. I have determined that [La Jolla's trust deeds] should be declared void ab initio. Property should be—the property should be released from these liens. Pursuant to the statute, I do not think I have any alternative but to award costs and fees. However, I do decline to award the statute that—the penalty that's provided by statute. I think that knowledge or reason to know is not quite the situation here and so I don't—I don't think that that's applicable many [sic].

After the court announced its ruling, neither party requested that the court clarify the basis for its decision. Instead, Plaintiffs' attorney drafted and submitted a proposed order providing fifteen findings not specifically articulated in the trial court's ruling quoted above, but presumably taken from the evidence presented at the evidentiary hearing, in support of the trial court's granting Plaintiffs' petition to nullify the wrongful lien. Counsel for La Jolla also participated in the drafting of the order, reviewing and suggesting some changes to the proposed order, which the trial court signed on September 29, 2009.[1] Given these circumstances, I conclude that this is not a typical "approved as to form" scenario. The parties in drafting the proposed order did not clarify the basis for the court's ruling and instead took it upon themselves to provide a basis for the ruling. By doing so, La Jolla failed to preserve its challenge for appeal.

¶ 26 Not only did La Jolla fail to alert the trial court of its failure to make adequate findings to support the September 29, 2009 ruling granting Plaintiffs' petition to nullify the wrongful lien, La Jolla also proceeded to stipulate to a result based on the findings made in that order. The parties stipulated, in part, as follows:

> Based upon the [September 29, 2009] Order constituting the law of the case, the parties acknowledge that the Court would rule, upon proper motion being brought by [Interstate], that [Interstate is] entitled to relief on [its] First and Second Causes of Action, quieting title to Pad "A" in BRB-5, declaring that the Interstate–Carlsbad Quit Claim Deed was void and of no force or effect, and declaring that the Deeds of Trust were null and void ab initio solely to the extent that they created or purported to create an encumbrance of lien upon Pad "A." Accordingly, the parties stipulate that, subject to the terms of this Stipulation, the Court may enter such an order.

In so stipulating, La Jolla again failed to inform the trial court that it believed further

---

1. Plaintiffs' attorney submitted the proposed order, which the trial court signed while La Jolla was reviewing the order. After La Jolla reviewed the order, it suggested some changes to the proposed order. Plaintiffs made the changes and submitted a revised order, which the court signed. Once the parties learned that the trial court had signed both the original and the revised proposed order, they filed a stipulated motion to set aside the original proposed order regarding Plaintiffs' petition to nullify wrongful lien. The trial court granted said request and entered an order stating that the revised order, the September 29, 2009 order, was the controlling order regarding Plaintiffs' petition for wrongful lien.

findings and conclusions of law were necessary to clarify the basis for its decision. By failing to challenge the detail, or adequacy of the findings with the trial court, La Jolla waived the arguments that are the basis of this appeal. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 56, 99 P.3d 801; *see also id.* ¶ 51 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue. This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." (alterations in original) (citation and internal quotation marks omitted)).

¶ 27 Although the majority may be correct that our ability to remand is not proscribed by La Jolla's failure to preserve its objection to the adequacy of the trial court's findings, *see supra* ¶ 20, I do not believe there is an appropriate reason to remand. The trial court's findings in this case can be fairly described as " 'adequately supported by the evidence but nevertheless insufficiently detailed to disclose the steps by which the judge reached … her conclusions.' " *See In re K.F.,* 2009 UT 4, ¶ 62, 201 P.3d 985 (quoting *438 Main St.,* 2004 UT 72, ¶ 54, 99 P.3d 801). Our supreme court has stated, that in such a situation, "A trial judge does not have the chance to address the adequacy of the findings themselves, unless that issue is brought before him or her," *id.,* and "[j]udicial economy would be disserved if we permitted a challenge to the adequacy of the detail in the findings to be heard for the first time on appeal," *id.* ¶ 63. Additionally, the supreme court noted that there are several reasons weighing against a remand when the challenging party fails to preserve an adequacy of the findings argument, as is the case here. "Not only is an error in the detail in the findings easy for a trial judge to correct, but it is an error that is best corrected when the judge's findings are fresh in the judge's mind," *id.,* and that "it is a waste of judicial resources for an appellate court to entertain such a challenge when the only likely remedy is merely a remand to the trial court for more detailed findings," *id.*

¶ 28 Because La Jolla did not first provide the trial court with the opportunity to correct the error, I would decline to offer the remedy of remand or reach La Jolla's challenge to the trial court's findings of fact. *See id.* ¶¶ 63–64 (declining to remand the case or reach mother's claim that the findings were inadequately detailed because she failed to preserve it). As a result, I would affirm the trial court's ruling.