2001 UT App 277

**Frederick GABRIEL and Elizabeth Isakian, as natural children of Arek Tahmassian, deceased, Plaintiffs and Appellants,**

v.

**SALT LAKE CITY CORPORATION, Salt Lake City Police Department, John and Jane Does I–X, and XYZ Corporations I–X, Defendants and Appellees.**

**No. 20000824–CA.**

Court of Appeals of Utah.

Sept. 27, 2001.

---

David W. Parker, Parker, Freestone & Angerhofer, PC, Sandy, for Appellants.

Martha S. Stonebrook, Salt Lake City Law Department, Salt Lake City, for Appellees.

Before Judges GREENWOOD, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Plaintiffs Frederick Gabriel and Elizabeth Isakian (Appellants) appeal from an order granting summary judgment in favor of Salt Lake City Corporation (City), dismissing their negligence claim. We reverse and remand.

## BACKGROUND

¶ 2 In the early morning hours of April 20, 1996, Steven Mayfield (Mayfield) struck and killed Arek Tahmassian, Appellants' mother, with the City vehicle he was driving as Tahmassian crossed North Temple in the vicinity of 1500 West in Salt Lake City. Tahmassian did not cross North Temple in a marked

crosswalk. The closest marked crosswalk to the proximity where Tahmassian crossed North Temple was approximately two blocks west at Redwood Road.[1]

¶ 3 At the time of the accident, Mayfield, an evidence technician for the Salt Lake City Police Department (Department), was en route to a non-emergency call to investigate a crime scene. Mayfield was traveling westbound on North Temple. He indicated that he was driving at a speed of approximately 35 to 40 mph and that he had the vehicle's headlights on. He also indicated that he had the vehicle's heater on and was listening to a talk radio program.

¶ 4 Following the accident, an investigation ensued, which included taking a statement from Mayfield,[2] performing brake tests on the vehicle, and drawing blood from Mayfield. The blood draw showed that Mayfield had neither drugs nor alcohol in his blood. The accident report concluded that at the time of the accident, it was still dark outside, there was little or no traffic on the road, and there was no rain or fog to impair Mayfield's vision. Ultimately, the Department neither reprimanded Mayfield nor cited him for a traffic violation as a result of the accident.

¶ 5 On January 9, 1998, Appellants filed negligence claims against Mayfield, individually, and against the City. Later, Appellants amended their complaint, dropping Mayfield as a named defendant. In their complaint, Appellants asserted that Mayfield's "failure to pay attention to the road, objects and pedestrians" resulted in the accident. Appellants also asserted that "[d]efendants engaged in negligent infliction of emotional stress towards the plaintiffs." As a result, Appellants sought damages for out-of-pocket medical, hospital, and funeral expenses, as well as loss of inheritance. Appellants also sought damages for mental anguish.

¶ 6 On June 2, 2000, the City moved for summary judgment asserting: (1) Appellants' negligence claim fails because the City did not owe Tahmassian a duty of care; (2) Tahmassian's own negligence exceeded fifty percent, and therefore, Utah Code Ann. § 78–27–38, the Comparative Negligence Act, barred Appellants' claim; and (3) Utah Code Ann. § 63–30–10, the Governmental Immunity Act, precluded Appellants from recovering damages resulting from mental anguish.

¶ 7 On August 28, 2000, the trial court granted the City's motion, stating simply that the City's motion was granted "for the reasons set forth in [the City's] memorandum supporting its motion." The trial court's order did not explain the basis for its conclusions, nor did the trial court explain its conclusions at a later time. This appeal followed.

ISSUE AND STANDARD OF REVIEW

¶ 8 Although the parties argue the applicability of the public duty doctrine, the Governmental Immunity Act, and Utah's comparative negligence statute, the central issue before us is whether, in light of Utah Rule of Civil Procedure 52(a), the trial court adequately supported its decision to grant the City's summary judgment motion, enabling us to review the trial court's decision properly. " 'We review the trial court's summary judgment ruling[ ] for correctness.' " *Fire Ins. Exch. v. Therkelsen*, 2001 UT 48, ¶ 11, 27 P.3d 555 (citation omitted).

ANALYSIS

¶ 9 In granting the City's Motion for Summary Judgment, the trial court stated that it granted the motion for the reasons set forth in the City's supporting memorandum. The trial court did not explain the basis for its decision. Utah Rule of Civil Procedure 52(a)

---

1. Some dispute exists between the parties regarding the circumstances surrounding the accident. Appellants claim that the point at which Tahmassian crossed North Temple was adequately lit; however, the City disputes Appellants' claim. Further, Appellants claim that Tahmassian had crossed three of North Temple's six traffic lanes before being struck. The City also disputes this claim.

2. In that statement, Mayfield estimated his speed at the time of the accident, indicated that the vehicle was in good working condition, and indicated he was not distracted by anything prior to the accident.

states that the trial court "shall ... issue a brief written statement of the ground for its decision on all motions granted under Rule[ ] ... 56 ... when the motion is based on more than one ground." Utah R. Civ. P. 52(a).

█ ¶ 10 Although failure to adhere to Rule 52 does not, in and of itself, warrant reversal, *see Retherford v. AT & T Communications*, 844 P.2d 949, 958 n. 4 (Utah 1992), "the presumption of correctness ordinarily afforded trial court rulings 'has little operative effect when [we] cannot divine the trial court's reasoning because of the cryptic nature of its ruling.'" *Id.* (quoting *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 800 (Utah 1992)). As is evident from our discussion below, we are unable to square the trial court's ruling with the various arguments asserted in the City's motion. Accordingly, we are left with little choice but to reverse and remand the trial court's decision.

### A. The Governmental Immunity Act

█ ¶ 11 The City argued that Appellants "are not entitled to recover damages for intentional infliction of emotional distress." Indeed, Utah Code Ann. § 63–30–10 (2000), the Governmental Immunity Act (the Act), expressly states that all governmental entities retain immunity from claims for "infliction of mental anguish." *Id.* § 63–30–10(2). However, "[i]mmunity from suit of all governmental entities is waived for injury proximately caused by a negligent act ... of an employee committed within the scope of employment." *Id.* § 63–30–10.

¶ 12 Here, Appellants filed a negligence claim against the City, requesting a variety of damages that included damages for mental anguish. While the trial court may have relied upon subsection 2 of the Act to dismiss Appellants' attempt to recover damages for infliction of mental anguish, it could not have relied upon the Act to dismiss Appellants' entire negligence claim because under the Act immunity has been waived. *See id.* Because the trial court failed to "issue a brief written statement of the ground for its decision," we are unable to discern to what extent, if any, the trial court relied upon the Act in reaching its decision. Utah R. Civ. P. 52(a).

### B. Comparative Negligence

█ ¶ 13 In its Motion for Summary Judgment, the City argued that "Tahmassian's negligence was greater than 50%," and therefore, Utah Code Ann. § 78–27–38, the Comparative Negligence Act, precludes Appellants from recovering on their negligence claim. The Comparative Negligence Act, in pertinent part, states: "[a] person seeking recovery may recover from any defendant ... whose fault ... exceeds the fault of the person seeking recovery." *Id.* § 78–27–38(2). In *Acculog, Inc. v. Peterson*, 692 P.2d 728 (Utah 1984), our supreme court addressed the issue of comparative negligence, explaining:

> From its inception comparative negligence law has been so construed that once the combined negligence of plaintiff and defendant in causing the injury to the plaintiff is established, it is within the province of the trier of fact to apportion fault or causation.... In other words, where plaintiff's negligent conduct was a contributing factor in *causing* the injury, comparative negligence becomes a defense for the defendant.

*Id.* at 730 (citation omitted).

¶ 14 Further, with regard to negligence claims in general, this court has explained that "'negligence cases often require the drawing of inferences from facts, which is properly done by juries rather than judges, "summary judgment is appropriate in negligence cases only in the clearest instances."'" *Trujillo v. Utah Dep't of Transp.*, 1999 UT App 227, ¶ 12, 986 P.2d 752 (quoting *Nelson v. Salt Lake City*, 919 P.2d 568, 571 (Utah 1996) (citation omitted)). Moreover, "[t]rial courts must avoid weighing evidence and assessing credibility when ruling on motions for summary judgment." *Id.* at ¶ 42.

¶ 15 Here, we are unable to glean from the trial court's ruling (1) to what extent, if any, the trial court relied upon the Comparative Negligence Act in reaching its decision; (2) what factual inferences, if any, the trial court drew in reaching its decision, *see id.* at ¶ 11; and (3) whether the trial court impermissibly

weighed the evidence or assessed credibility. *See id.* at ¶ 42. Finally, assuming the trial court relied upon the Comparative Negligence Act to reach its decision, we are left without explanation as to why the trial court invaded what is typically "the province of the trier of fact to apportion fault or causation." *Acculog,* 692 P.2d at 730.

### C. Public Duty Doctrine

¶ 16 The City argued that it owed Tahmassian no duty of care, and therefore, Appellants cannot make out a prima facie negligence claim. The City relies on the public duty doctrine to support its argument. In *Day v. State,* 1999 UT 46, 980 P.2d 1171, our supreme court explained:

> The public duty doctrine provides that although a government entity owes a general duty to all members of the public, that duty does not impose a specific duty of care on the government with respect to individuals who may be harmed by government action or inaction, unless there is some specific connection between the government agency and the individuals that makes it reasonable to impose a duty.

*Id.* at ¶ 12.

¶ 17 Further, the court explained:

> At least four circumstances may give rise to a special relationship between the government and specific individuals. A special relationship can be established (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by government actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

*Id.* at ¶ 13 (internal footnotes and citations omitted).

¶ 18 As our supreme court stated in *Lyon v. Burton,* 2000 UT 19, 5 P.3d 616, "[g]ener-

ally, it is appropriate to address liability issues, particularly the issue of whether a defendant owes a plaintiff a duty of due care, prior to addressing the affirmative defense of the defendant's immunity from suit." *Id.* at ¶ 12 (discussing governmental entity's immunity from suit under Utah Code Ann. § 63–30–10, the Governmental Immunity Act). However, as we have previously discussed, the trial court has provided this court with neither a statement regarding the City's duty, or lack thereof, nor a statement indicating whether it did in fact rely on the public duty doctrine in dismissing Appellants' negligence claim.

¶ 19 Of particular significance, is the absence of any discussion by the trial court regarding the public duty doctrine in light of the fact that a special relationship can be established "by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm." *Day,* 1999 UT 46 at ¶ 13. This is significant because Utah Code Ann. § 41–6–80 (2000) states that "the operator of a vehicle shall exercise care to avoid colliding with any pedestrian." *Id.*[3] Whether or not this exception is applicable to the present matter, the trial court's failure to provide a specific basis for its decision precludes us from determining to what extent, if any, the trial court relied on the public duty doctrine in reaching its decision.

### CONCLUSION

¶ 20 Because we cannot determine which of the several grounds advanced by the City in its Motion for Summary Judgment the trial court relied upon in making its ruling, we reverse the trial court's decision and remand for proceedings consistent with our opinion.

¶ 21 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

**3.** *See also* Salt Lake County, Utah, Code of Ordinances, Title 11.12.030 (2001) (stating "[i]t is unlawful for any person to drive a vehicle on streets of the county without keeping a reasonable and proper lookout for other traffic, *persons* or objects" (emphasis added)).