2006 UT App 513

UTAH LOCAL GOVERNMENT TRUST,
Plaintiff and Appellant,

v.

WHEELER MACHINERY CO.,
Defendant and Appellee.

No. 20050557–CA.

Court of Appeals of Utah.

Dec. 29, 2006.

Scott M. Lilja and Nicole M. DeForge, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, and Huey P. Cotton, Los Angeles, California, for Appellant.

Joseph C. Rust and Matthew G. Bagley, Kesler & Rust, Salt Lake City, for Appellee.

Before BENCH, P.J., ORME and THORNE, JJ.

## OPINION

ORME, Judge:

¶1 After a roof fire at its power plant, Appellant Utah Local Government Trust (the City)[1] brought a claim against Appellee Wheeler Machinery Co. (Wheeler). The City alleged, under negligence and contract theories, that Wheeler was responsible for the exhaust system modification that caused the fire. The trial court granted summary judgment in favor of Wheeler, and the City now appeals. We reverse.

## BACKGROUND[2]

¶2 The City hired Wheeler to supply two generator sets to the City for its power plant, including the entire exhaust system. It was later determined that the mufflers, which were part of the exhaust system, were too heavy to be installed on the power plant's roof as the plans had originally intended. This problem was addressed by installing wooden supports and C-channel metal frames on the roof to help support the weight of the mufflers. Thus, each exhaust pipe ran from a generator, through a thimble placed in the roof, and to a muffler resting on the wooden supports and a metal frame cradle. A rain cap was also installed atop the thimble to keep moisture from entering the building through the gap between the thimble and the exhaust pipe.

¶3 Richard Carlson of Independence Welding installed various parts of the exhaust system, including the rain cap. During the installation, however, Carlson discovered that the rain cap was too large to fit within the metal frame cradle supporting the muffler. To ensure a proper fit, Carlson cut off about one-half inch on two sides of the rain cap. Carlson later submitted an invoice to Wheeler—not the City—for his work on the exhaust system, including his work on the rain cap. Wheeler paid the invoice without argument.

¶4 On August 3, 2000, several months after the generators were put into operation, a fire started on the roof, resulting in extensive damage to the building and equipment. The fire was caused when the modified rain cap directed the heated air toward the wooden supports.[3] In 2003, the City brought suit against Wheeler for negligence and breach of contract, claiming Wheeler's installation of the exhaust system was faulty. Wheeler thereafter filed a motion for summary judgment, which the trial court granted, and the City timely appealed.

## ISSUE AND STANDARD OF REVIEW

¶5 The City argues that summary judgment was inappropriate because there were controverted issues of material fact. "Because a summary judgment challenge presents only legal issues, we review the grant of summary judgment for correctness. We consider only whether the trial court correctly applied the law and correctly con-

---

1. Utah Local Government Trust secures and oversees insurance for many publicly owned properties. One of those properties is the Hurricane City power plant, the property involved in this case. Because the actions in issue were those of Hurricane City, we refer to Appellant accordingly.

2. " 'In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *Aurora Credit Servs., Inc.* v. *Liberty W. Dev., Inc.,* 970 P.2d 1273, 1277 (Utah 1998) (quoting *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993)) (alteration omitted). We recite the facts accordingly.

3. There is some suggestion that the generators overheated and were, to some degree, the cause of the fire. Such a claim, however, would clearly be barred by the two-year product liability statute of limitations, *see* Utah Code Ann. § 78–15–3 (2002), and we therefore do not address it.

cluded that no disputed issues of material fact existed." *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1277 (Utah 1998) (citation omitted).

## ANALYSIS

### I. Factual Disputes

■■ ¶ 6 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). The Utah Rules of Civil Procedure further specify what type of evidence is required to oppose summary judgment and to establish that there are genuine issues of material fact:

[O]pposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Summary judgment, if appropriate, shall be entered against a party failing to file such a response.

Utah R. Civ. P. 56(e). Thus, in the face of a motion to strike or other timely objection, "[s]tatements made merely on information and belief will be disregarded. Hearsay and opinion testimony that would not be admissible if testified to at the trial may not properly be set forth" to establish a disputed issue. *Walker v. Rocky Mountain Recreation Corp.*, 29 Utah 2d 274, 508 P.2d 538, 542 (1973). Failure to produce acceptable evidence demonstrating a genuine issue of material fact will result in a grant of summary judgment. *See* Utah R. Civ. P. 56(e).

¶ 7 The trial court determined that the City had failed to meet the standards of rule 56(e), reasoning that the City's memorandum "cited to materials which are not properly considered in the context of summary judgment" and "exaggerated, and ... occasionally misrepresented, the substance of the material cited." The court therefore determined that the City had failed to appropriately show any disputed issues of material fact, and the court granted summary judgment in favor of Wheeler. Although we sympathize with the trial court's frustration regarding the City's memorandum,[4] we determine that summary judgment was inappropriate because the City did produce sufficient admissible evidence to demonstrate the existence of genuine issues of material fact.[5]

4. The Utah Rules of Civil Procedure required the City to repeat verbatim each fact presented by Wheeler and then to succinctly address why the City did or did not agree with that fact. *See* Utah R. Civ. P. 7(c)(3)(B). The City's adherence to this rule was uneven at best. As a result, it is often difficult to discern whether the City was actually disagreeing with a fact stated by Wheeler or only disagreeing with the fact's legal significance.

Further, as noted by the trial court, there are several instances where the City exaggerated the material contained within the cited portion of the record. For example, the City asserted that "[t]he City, Alpha Engineering and the general contractor could not make a move without input from Wheeler." Despite its colloquial tone, this is not language from the record, but rather is the City's exaggerated summary of testimony that the City had been waiting for Wheeler to provide the smokestack design and that Wheeler representatives participated in a meeting regarding the issue. Unfortunately, such exaggeration and other liberties with the record continued with some frequency in the City's brief on appeal.

5. The trial court noted its hesitation in granting summary judgment based on noncompliance with rules 7 and 56 of the Utah Rules of Civil Procedure, stating that appellate courts do not always enforce these rules. We recognize that the Utah Supreme Court has, using harmless error analysis, reversed a summary judgment that was based on noncompliance with the technical requirements of rule 7. *See Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 23 n. 4, 89 P.3d 155 (referencing rule 4–501(2)(B) of the Utah Code of Judicial Administration, which was the previous repository of the current rule 7 requirements). And we further recognize that there is some resulting uncertainty about whether the trial court ever has discretion to grant summary judgment based on simple noncompliance with the formalities of rule 7. *See Gary Porter Constr. v. Fox Constr., Inc.*, 2004 UT App 354, ¶ 15 n. 2, 101 P.3d 371, *cert. denied*, 123 P.3d 815 (Utah 2005). We do not, however, see the same incertitude regarding noncompliance with the requirements of rule 56. We find no case where an appellate court has reversed summary judgment when the opposing affidavit did

¶8 Most significantly, the City's memorandum sets forth evidence showing that there are disputed issues of material fact regarding the installation of the exhaust system, particularly with respect to whether Carlson was working at Wheeler's behest when he modified the rain cap. For example, the testimony of Wheeler's Robert Spears indicates that he hired Carlson on behalf of Wheeler. And Carlson testified that the invoice for his work on the rain cap was paid by Wheeler without dispute. These facts, when viewed in the light most favorable to the nonmoving party, would support the conclusion that Carlson was acting as an agent of Wheeler when he modified the rain cap.

¶9 Wheeler argues that, at most, it paid for some of Carlson's work as part of the give-and-take in the project, but that Wheeler was never contractually responsible for the installation or resulting payment. Therefore, Wheeler argues, the retained control doctrine protects it from any liability because it was not directing Carlson's actions. *See Thompson v. Jess*, 1999 UT 22, ¶ 19, 979 P.2d 322 ("[A] principal employer is subject to liability for injuries arising out of its independent contractor's work if the employer is actively involved in, or asserts control over, the manner of performance of the contracted work.").

¶ 10 In this case, however, there is sufficient evidence to create a question as to the applicability of the retained control doctrine. First, an invoice notation suggests that Wheeler's agents gave verbal approval for Carlson's work. Second, the City's retained expert, Richard McPherson, stated that Don Johnson, a City employee, indicated that the direction to "make it fit" came from Wheeler's Spears, also strongly suggests that Wheeler was directing Carlson's actions.[6] Further, Spears agreed that "any installation by Wheeler of the exhaust system was part and parcel of the installation of the generators and the exhaust system sold to the plaintiff as a single sale," [7] which certainly supports the view that Wheeler was contractually responsible for at least some portion of the installation. Finally, if it is determined that Wheeler was responsible for the portion of installation that included the rain cap, then Wheeler would clearly be liable for Carlson's modification of the rain cap regardless of who actually directed Carlson to make the modification. *See First Am. Commerce Co. v. Washington Mut. Sav. Bank*, 743 P.2d 1193, 1194 (Utah 1987) ("[C]ourts agree that a party who delegates his duties under a contract to a third person is not relieved of

---

not present evidence appropriate under rule 56(e) and the moving party had timely objected to such deficiency. *See generally Strange v. Ostlund*, 594 P.2d 877, 880 (Utah 1979) ("[I]f the opposing party does not move in a timely fashion to object to affidavits or strike them and hence they are admitted, then that party waives the right to show that they do not comply with Rule 56(e) of the Utah Rules of Civil Procedure."). Nor do we see how a failure to show the existence of disputed issues with facts "admissible in evidence" could be deemed harmless. Utah R. Civ. P. 56(e). Indeed, the rule itself provides that summary judgment shall be entered when an appropriate response is not filed. *See id.*

6. The statements by McPherson regarding Johnson's statement are not "obviously inadmissible hearsay," as characterized by the trial court, nor "double hearsay" as argued by Wheeler. In fact, the statements are not hearsay at all. McPherson's statements relaying what Johnson said are non-hearsay because Johnson, who was available to testify at trial and would have been subject to cross-examination concerning the matter, said he had no recollection of conversations regarding the rain cap modification. *See* Utah R. Evid. 801(d)(1). Furthermore, Johnson's statement that Spears gave the order to "make it fit," is not hearsay because the statement is not offered "to prove the truth of the matter asserted," Utah R. Evid. 801(c), but rather merely to show that the statement was made, which tends to show that Spears was directing Carlson. *See State v. Sorensen*, 617 P.2d 333, 337 (Utah 1980) ("When an out-of-court statement is offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule."). Thus, McPherson's testimony "would be admissible in evidence" and is therefore proper under rule 56. Utah R. Civ. P. 56(e).

7. Wheeler argues that this language was in reference to an initial bid, and did not reflect the actual agreement between the parties. But because there is no final written agreement between the parties, this bid is to some extent evidence of the parties' intent regarding the installation. Indeed, the bid formed the basis of the parties' agreement, since the parties' final arrangement resulted from oral modifications to the bid.

his responsibilities, but rather remains ultimately responsible to the party with whom he contracted for guaranteeing the successful execution of the contractual duties."). Thus, when the evidence is viewed in a light most favorable to the nonmoving party, the retained control doctrine does not support summary judgment in favor of Wheeler.

## II. Product Liability

¶ 11 Wheeler argues that even assuming there are disputed issues of material fact, summary judgment was nonetheless proper because the two-year statute of limitations for product liability claims had run. *See* Utah Code Ann. § 78–15–3 (2002). Wheeler argues that under the rule recognized in *Strickland v. General Motors Corp.,* 852 F.Supp. 956 (D.Utah 1994), "all claims against a manufacturer, based on a defective product, [are] subject to [the product liability statute of limitations], *regardless of the theory alleged." Id.* at 959 (emphasis added). The City agrees that the product liability statute of limitations would apply to all claims—including negligence claims—arising out of a product defect, but argues that its claims arise out of negligent installation, thus making a four-year statute of limitations applicable. *See* Utah Code Ann. § 78–12–25 (2002). The issue, then, is whether the defective installation alleged here is considered part of the product, thus making product liability analysis appropriate.

¶ 12 The Utah Product Liability Act provides that "[n]o product shall be considered to have a defect or to be in a defective condition, unless *at the time the product was sold* by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer." Utah Code Ann. § 78–15–6(1) (2002) (emphasis added). Thus, the after-sale negligent installation of a nondefective product does not give rise to a product liability claim. *See Alder v. Bayer Corp.,* 2002 UT 115, ¶ 23, 61 P.3d 1068 (stating that because a negligently installed machine was not defective when purchased, the case was one of negligence and not of product liability).

¶ 13 It is possible, however, for the installation to be considered part of the product if the installation occurred before sale. The opinion in *Jamison v. Spencer R.V. Ctr., Inc.,* 98 Or.App. 529, 779 P.2d 1091 (1989), is illustrative of this point. In *Jamison,* the plaintiff purchased a trailer hitch, which the seller assembled and installed on plaintiff's truck. *See id.* at 1092. The assembly and installation allegedly included a weld within the hitch that subsequently failed and resulted in an accident. *See id.* The court determined that the claim was based on a product defect and was therefore a product liability claim. The court reasoned: "Those allegations [that the seller was negligent in assembling component parts], if proved, would show that assembly and installation of the trailer hitch created a defect in the hitch, resulting in a defective product being sold to plaintiff." *Id.* at 1093 (footnote omitted). The court also specified that the assembly and customized installation were not "after-sale service" because "the alleged negligence occurred *before* the hitch was put into the stream of commerce"—i.e., the date the truck was picked up after the installation. *Id.* (emphasis in original). Thus, the court's focus, appropriately in our view, was on the condition of the product at the time of sale.

¶ 14 The facts of the instant case do not seem to fit the narrow situation in which installation work becomes integrated into the product itself. The City admits that "[t]he generator sets, including the accompanying mufflers, exhaust pipes, and other exhaust system components, were sold to the City as a single unit." But this is not enough to turn any claim involving those components into a product liability case. Instead, such would additionally require that the assembly and installation be performed by Wheeler *before* the systems were put into the stream of commerce, i.e., turned over to the City. This is clearly not what occurred here. Even assuming Wheeler was contractually responsible for the exhaust system installation, such installation did not happen prior to the sale, but was instead done after at least some control over the component parts had been relinquished to the City.

¶ 15 So although there are disputed facts as to which party was actually responsible for the exhaust system installation, it is nonetheless clear that the City was to some extent involved in the assembly and installation of the exhaust system. Thus, the product sold to the City was the various components of the generator system, which components were not defective at the time of sale. And the installation of the nondefective exhaust system—whether rendered by the City or its agent or by Wheeler or its agent—was an "after-sale" service. *Id.* Because the claims here are not product liability claims, but ultimately negligence claims, the statute of limitations had not run and the claims were timely filed.

## CONCLUSION

¶ 16 There is admissible evidence that creates genuine issues of material fact, including the question of which party is liable for the exhaust system modifications. And because the claims here result from the after-sale installation of a nondefective product, they are not barred by the two-year product liability statute of limitations. Therefore, summary judgment was inappropriate, and we reverse and remand for trial or for such other proceedings as may now be appropriate.

¶ 17 I CONCUR: WILLIAM A. THORNE JR., Judge.

¶ 18 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Presiding Judge.