2008 UT App 129

**Robert C. STEVENS dba Keystone Repair, individually, Plaintiff and Appellant,**

v.

**LaVERKIN CITY, a municipal corporation and political subdivision of the State of Utah, Defendant and Appellee.**

No. 20070031–CA.

Court of Appeals of Utah.

April 10, 2008.

1060

Shawn T. Farris and Chad J. Utley, St. George, for Appellant.

Bryan J. Pattison and Heath H. Snow, St. George, for Appellee.

Before GREENWOOD, P.J., THORNE, Associate P.J., and BENCH, J.

## OPINION

BENCH, Judge:

¶1 Robert C. Stevens appeals the trial court's grant of summary judgment in favor of LaVerkin City (the City), which resulted in the dismissal of his inverse condemnation claim, and the trial court's denial of his motion to set aside the judgment. Stevens claims that, despite his failure to timely respond to the City's motion, the trial court erred in granting summary judgment in favor of the City because there were genuine issues of material fact evident on the face of the City's motion and in the record itself and because summary judgment was not appropriate as a matter of law. Stevens also asserts that summary judgment should be reversed because the trial court's order failed to include a brief statement of the

grounds underlying the ruling, as required by rule 52(a) of the Utah Rules of Civil Procedure. Additionally, Stevens claims that the trial court abused its discretion by denying his motion to set aside the judgment. In the alternative, Stevens argues that the judgment should be set aside because his attorney's failure to file a memorandum in opposition to the City's motion for summary judgment constituted gross negligence. We affirm.

## BACKGROUND

¶ 2 In late 1998 or early 1999, Stevens purchased property located at 95 South State Street in the City (the 95 South State Street Property). Stevens purchased this property with the intent to operate a business involving the acquisition, repair, and sale of damaged vehicles, as well as the repair of damaged vehicles owned by others. Stevens requested preliminary approval from the LaVerkin City Council (the City Council) for an auto body shop and a used car dealership on this property. The City Council granted preliminary approval of the projected business and issued Stevens a conditional use permit and a business license for an auto body repair shop. Shortly after receiving the City Council's approval in early 2000, Stevens commenced business operations as Keystone Repair.

¶ 3 Two years later, Stevens purchased additional property in the City, located at 160 South State Street (the 160 South State Street Property). Like the 95 South State Street Property, this property was zoned as general commercial. Stevens obtained informal verbal approval from city officials to store vehicles at the 160 South State Street Property that would eventually be processed for repair at the 95 South State Street Property.

¶ 4 Stevens then formally requested a conditional use permit to use the front portion of the 160 South State Street Property as a used car lot for vehicles he refurbished at the 95 South State Street Property. The City Council granted a six-month conditional use permit that limited Stevens to having no more than twenty refurbished cars on the lot. The City Council later granted a second six-month conditional use permit for the continued use of the 160 South State Street Property as a used car lot and imposed several additional conditions.

¶ 5 In October 2004, the City held a joint meeting with the City Council and the LaVerkin City Planning Commission (the Planning Commission) primarily to address concerns regarding the vehicles parked on and around the two properties. The concerns centered on the expanding number of vehicles on the properties and related safety issues, as well as whether the use of property to store and refurbish wrecked vehicles was authorized under Stevens's previous conditional use permit. At the conclusion of the meeting, the City Council resolved to make Stevens's continued operation of his business conditional on his satisfaction of several requirements related to usage of his property and parking of both damaged and refurbished vehicles.

¶ 6 Two months later, the City Council held a hearing to consider the status of the conditional use permit issued to Stevens in 2000 for the 95 South State Street Property. At the conclusion of the hearing, the City Council determined not to revoke the conditional use permit, but to modify it by converting it to a temporary, six-month permit with additional conditions. The City issued the modified conditional use permit in January 2005.

¶ 7 At some point, the City began contemplating work on 100 South Street, including widening the road. Since such work might have reduced the distance between the street and Stevens's buildings and made the buildings noncompliant with zoning requirements, the entire 95 South State Street Property would have needed to be condemned. In light of these zoning issues and the ongoing concerns regarding parking, appearance, and public safety with respect to the property, the City Council entered into negotiations with Stevens for the purchase of the 95 South State Street Property. These negotiations concluded in late December 2005.

¶ 8 In the meantime, the City Council held two hearings regarding the renewal of Stevens's temporary conditional use permits for

both of the properties. In June 2005, the City Council determined that Stevens had failed to comply with the conditions associated with his permit for the 160 South State Street Property and voted not to renew the permit. The City Council later determined that Stevens remained in noncompliance with the modified conditional use permit on the 95 South State Street Property and voted not to renew that permit either. Notwithstanding the revocation of the conditional use permits, Stevens continued to conduct business operations from both properties.

¶ 9 Stevens attended all the hearings held by the City Council to review his requests for conditional use permits, to evaluate suggested modifications to the permits, or to consider the revocation or nonrenewal thereof. The only meeting relevant to his permits that Stevens did not attend was the City Council and the Planning Commission's joint meeting in October 2004. Stevens claims that he was not given notice of the meeting or the intended discussion at the meeting of his business activities. Despite his attendance at all the other relevant hearings, Stevens never appealed the nonrenewal of his conditional use permits to the LaVerkin City Board of Adjustment. Likewise, Stevens never appealed the City Council's modification of his conditional use permit on the 95 South State Street Property.

¶ 10 The City sent a final offer to purchase the 95 South State Street Property, which offer expired on January 4, 2006. Stevens did not accept the offer by the deadline. In a letter dated January 5, 2006, the LaVerkin City Manager notified Stevens that the City intended not to renew Stevens's business license for his automobile repair and salvage business located at 95 South State Street. The letter stated that the action would be formally taken by the City Council at its January 18, 2006 meeting. Stevens and his counsel attended that meeting and were given the opportunity to present evidence and argument in support of Stevens's position that his business license should not be revoked. At the conclusion of the hearing, however, the City Council voted not to renew Stevens's business license.

¶ 11 That same day, Stevens filed a verified complaint against the City alleging a single cause of action: inverse condemnation. In his complaint, Stevens alleged that the City had attempted, by threatening civil and criminal prosecution and by refusing to renew his conditional use permits and business license, to coerce Stevens into selling his real property. Specifically, Stevens alleged that the City's revocation or refusal to renew his business license constituted a taking of property. The only constitutional provision referenced in the complaint was Article I, Section 22 of the Utah Constitution.

¶ 12 The City filed a motion for summary judgment, arguing that Stevens's inverse condemnation claim failed because Stevens had not exhausted his administrative remedies and because the undisputed facts indicated that no taking of property had occurred as a matter of law. In this motion, the City repeated the factual findings made by the trial court in the court's prior memorandum decision following the parties' dueling motions for a preliminary injunction.[1] Rather than citing the record directly in its motion, the City referenced the trial court's memorandum decision, which cited depositions and other documents in the record.

¶ 13 The City's motion for summary judgment was received at the law offices of Ascione, Heideman, & McKay, LLC (AHM) on October 30, 2006. Around this same time, AHM commenced an expansion of its law office to a newly-acquired space on an upper floor of its building. Due to delays in the delivery of furniture and equipment necessary to complete the move, AHM counsel working on Stevens's case, Robert Avery, and other staff worked either from home or temporary desks within the law office. Additionally, Avery had recently hired a new assistant. For reasons that were not specified, Avery did not actually see a copy of the City's motion for summary judgment until the morning of November 20, 2006.

¶ 14 Realizing that the deadline had passed for filing a memorandum in opposition to the summary judgment motion, Avery attempted to procure an extension from the City's coun-

1. The trial court had previously denied both mo- tions.

sel. The City's counsel responded that the City had already filed a request to submit the motion for decision. Upon receiving the City's request to submit, the trial court entered summary judgment in the City's favor. The order stated only that the judgment was "[b]ased on Defendant City of LaVerkin's Motion for Summary Judgment against Plaintiff Robert C. Stevens and the Memorandum in Support of said Motion, and good cause appearing."

¶ 15 Stevens subsequently filed a motion to set aside the grant of summary judgment pursuant to rule 60(b) of the Utah Rules of Civil Procedure, arguing that the order should be set aside due to Avery's excusable neglect or, in the alternative, in the interest of allowing the case to be heard on the merits.[2] The trial court denied Stevens's motion, finding that Stevens had described the "ordinary challenges in day to day business at a law firm" and that none of the circumstances identified "were beyond [the] control" of Stevens's counsel. Specifically, the trial court found that Stevens had "submitted no evidence of having taken any precautions to avoid or minimize the challenges [AHM] claimed to be under as a result of its office renovations." Due to this lack of evidence or explanation, "[w]hat happened to [the motion] for the ... twenty days [between AHM's receipt and Avery's awareness of the motion] is a mystery to the [c]ourt." Ultimately, the trial court concluded that the neglect was not excusable.

## ISSUES AND STANDARDS OF REVIEW

¶ 16 Stevens asserts that the trial court erred in granting summary judgment in favor of the City because there were genuine issues of material fact evident on the face of the City's recitation of the facts, and even under the City's recitation of the facts, Stevens's inverse condemnation claim succeeded as a matter of law. We review a trial court's "legal conclusions and ultimate grant or denial of summary judgment" for correctness, *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312, and "we view the facts and all

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). Stevens also asserts that the grant of summary judgment should be reversed because the trial court's ruling did not contain a brief statement of the grounds upon which the motion was granted, as required by rule 52(a) of the Utah Rules of Civil Procedure. We review for correctness the issue of "whether, in light of Utah Rule of Civil Procedure 52(a), the trial court adequately supported its decision to grant the ... summary judgment motion." *Gabriel v. Salt Lake City Corp.*, 2001 UT App 277, ¶ 8, 34 P.3d 234.

¶ 17 Stevens next claims that the trial court abused its discretion in denying his motion to set aside the summary judgment because his counsel's neglect was excusable. In the alternative, Stevens argues that the judgment should be set aside because his counsel's actions constitute gross negligence that should not be attributable to Stevens. "Utah appellate courts review a trial court's denial of a motion for relief from judgment under rule 60(b) for abuse of discretion." *Rukavina v. Sprague*, 2007 UT App 331, ¶ 2, 170 P.3d 1138. Although "some basis may exist to set aside the default[, it] does not require the conclusion that the court abused its discretion in refusing to do so when facts and circumstances support the refusal." *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986); *accord Black's Title, Inc. v. Utah State Ins. Dep't*, 1999 UT App 330, ¶ 5, 991 P.2d 607.

## ANALYSIS

### I. Grant of Summary Judgment

#### A. Existence of a Genuine Issue of Material Fact

■ ¶ 18 Stevens claims that, despite his failure to respond to the City's motion for summary judgment, the trial court erred in entering summary judgment because there were disputed material facts evident on the face of the City's motion and in the record.

---

2. Although Avery filed the motion to set aside the judgment on Stevens's behalf, Stevens subsequently retained new counsel who filed a reply

memorandum to the City's memorandum in opposition to the motion to set aside.

In *Orvis v. Johnson*, 2008 UT 2, 177 P.3d 600, the Utah Supreme Court recently clarified the respective burdens of the moving and nonmoving parties on summary judgment. Specifically,

> [a] summary judgment movant, *on an issue where the nonmoving party will bear the burden of proof at trial*, may satisfy its burden on summary judgment by showing, by reference to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue of material fact.

*Id.* ¶ 18 (emphasis added). Once the movant has made this showing "the burden then shifts to the *nonmoving* party, who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* "Failure to produce acceptable evidence demonstrating a genuine issue of material fact will result in a grant of summary judgment." *Utah Local Gov't Trust v. Wheeler Mach. Co.*, 2006 UT App 513, ¶ 6, 154 P.3d 175.

¶ 19 Stevens relies on *Frisbee v. K & K Construction Co.*, 676 P.2d 387 (Utah 1984), for the proposition that his failure to respond to the City's motion does not justify the entry of summary judgment. In *Frisbee*, the Utah Supreme Court summarized prior case law by stating, "an opponent of a motion for summary judgment must timely file responsive affidavits raising factual issues or risk the trial court's conclusion that there are no factual issues." *Id.* at 389–90. The supreme court further stated that summary judgment may not be entered "[w]here the moving affidavit shows on its face that there is a material issue of fact .... [or the] affidavit and supporting documents presented conclusions with no supporting facts and show unresolved issues of fact." *Id.* at 390.

¶ 20 In this case, the City moved for summary judgment on an issue where Stevens, the plaintiff, bore the burden of proof at trial.

The City satisfied its burden by showing that there was no genuine issue of material fact.[3] The City's recitation of the facts did not show on its face any genuine issue or dispute in the facts materially related to Stevens's inverse condemnation claim under Article I, Section 22 of the Utah Constitution. Furthermore, the City's recitation did not contain conclusory statements with respect to the inverse condemnation claim. Thus, no defects existed in the moving party's recitation of the undisputed facts, such as those highlighted in *Frisbee*, that would preclude the entry of summary judgment.

**B. Appropriateness of Summary Judgment as a Matter of Law**

¶ 21 Stevens also asserts that the City was not entitled to summary judgment as a matter of law because Stevens's inverse condemnation claim should have succeeded even if the facts, as presented by the City, were undisputed. Article I, Section 22 of the Utah Constitution states, "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22. In order to succeed on an inverse condemnation claim, a plaintiff "must possess some protectable interest in property before that interest is entitled to recover under this provision." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990). Before a property interest will be considered protectable under Article I, Section 22, a plaintiff must demonstrate something more "than a unilateral expectation of continued privileges." *Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 878 (Utah 1996). Rather, a plaintiff must show a " 'legitimate claim of entitlement to it,' " *Patterson v. American Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)), or in other words, a "vested, legally enforceable interest," *Bagford v. Ephraim City*, 904 P.2d 1095, 1099 (Utah 1995); *see also Smith v. Price Dev. Co.*, 2005 UT 87, ¶ 26, 125 P.3d 945 (describ-

---

**3.** It would have been preferable for the City to directly cite to the record when reciting the undisputed facts, rather than to the trial court's prior memorandum decision in response to the requested preliminary injunctions. However, because the prior decision contained a direct citation to the record for each factual finding, the evidentiary support for the City's statements of fact was readily ascertainable.

ing "a vested property interest" as "a completed, consummated right for present or future enjoyment").

¶ 22 Stevens has not demonstrated that he has any vested right in his business license. Stevens correctly cites *Anderson v. Utah County Board of County Commissioners*, 589 P.2d 1214 (Utah 1979), for the proposition that "licensing of [a] business does represent a substantial property interest to [the license holder that] ... should not be destroyed nor disrupted arbitrarily, nor without following fundamental standards of due process of law." *Id.* at 1216. However, the *Anderson* court took great caution to explain that it "d[id] not desire to be understood as saying that an operating business necessarily has any such vested or inviolable right in the renewal of its license." *Id.*[4]

¶ 23 Absent a vested property interest in his business license, Stevens's inverse condemnation claim fails as a matter of law. It is undisputed that the City did not condemn Stevens's real property on State Street. At most, Stevens's complaint alleged that the City attempted to force Stevens to sell the real property to the City, and that attempt was undisputedly unsuccessful. The crux of Stevens's inverse condemnation claim therefore lies in the revocation or nonrenewal of his business license, which did not constitute a vested property interest.[5]

## C. Adequacy of Summary Judgment Order

¶ 24 Stevens also claims that the summary judgment should be reversed because the trial court failed to comply with the requirements of rule 52(a) of the Utah Rules of Civil Procedure when issuing its decision on the City's motion for summary judgment. Rule 52(a) states that "[t]he court shall ... issue a brief written statement of the ground for its decision on all motions granted under [r]ule[ ] ... 56 ... when the motion is based on more than one ground." Utah R. Civ. P. 52(a). Although "failure to issue a statement of grounds is not reversible error absent unusual circumstances," *Retherford v. AT & T Commc'ns*, 844 P.2d 949, 958 n. 4 (Utah 1992), such a statement of grounds is undoubtedly highly useful and preferable, *see id.* ("[T]he presumption of correctness ordinarily afforded trial court rulings 'has little operative effect when members of this court cannot divine the trial court's reasoning because of the cryptic nature of its ruling.'" (quoting *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 800 (Utah 1992))). Reversal is justified, however, only where "we are unable to square the trial court's ruling with the various arguments asserted in [a] motion [for summary judgment]," *Gabriel v. Salt Lake City Corp.*, 2001 UT App 277, ¶ 10, 34 P.3d 234, or where there is sufficient "complexity of the issues in th[e] case," *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 10 n. 6, 78 P.3d 616.

¶ 25 This case does not present overly complex issues that we are unable to square with the trial court's ruling. Stevens brought only one claim against the City. The City's motion for summary judgment on that one claim presented only two grounds for dismissal—lack of ripeness of the claim due to Stevens's failure to exhaust administrative remedies and failure of the claim as a matter of law under the undisputed facts of the case. These two grounds are not competing but are merely additional justifications for the entry of judgment. Summary judgment could have been granted to the City based on either of the grounds, or both. We have already determined that Stevens's inverse condemnation claim failed as a matter of law under the undisputed facts of the case because Stevens did not have a vested right in the property interest he claimed was taken—his business license. Hence, we do not reverse.

---

4. Furthermore, "intangible assets [such] as profits and future business are generally not protected by the Takings Clause." *Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 877 (Utah 1996).

5. The nonrenewal of Stevens's temporary conditional use permits, which preceded the nonrenewal of his business license, would also not likely constitute a taking of property under Article I, Section 22 of the Utah Constitution. *See Diamond B–Y Ranches v. Tooele County*, 2004 UT App 135, ¶ 18, 91 P.3d 841 (casting doubt as to whether a plaintiff had a property interest in a conditional use permit itself where denial of the permit would not leave the real property economically idle).

## II. Denial of Motion to Set Aside Judgment

¶ 26 Stevens claims that the trial court abused its discretion by denying his motion to set aside the judgment made pursuant to rules 60(b)(1) and 60(b)(6) of the Utah Rules of Civil Procedure. "Rule 60(b) provides that '[o]n motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment.'" *Rukavina v. Sprague*, 2007 UT App 331, ¶ 3, 170 P.3d 1138 (alteration in original) (quoting Utah R. Civ. P. 60(b)). Under rule 60(b)(1), the limited circumstances in which such relief is appropriate includes "mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1). Stevens asserted only excusable neglect.

¶ 27 Excusable neglect is "the exercise of 'due diligence' by a reasonably prudent person under similar circumstances." *Mini Spas, Inc. v. Industrial Comm'n*, 733 P.2d 130, 132 (Utah 1987). To demonstrate that the summary judgment "was due to excusable neglect, '[t]he movant must show that he has used due diligence and that he was prevented from appearing by circumstances over which he had no control.'" *Black's Title, Inc. v. Utah State Ins. Dep't*, 1999 UT App 330, ¶ 10, 991 P.2d 607 (alteration in original) (quoting *Airkem Intermountain, Inc. v. Parker*, 30 Utah 2d 65, 513 P.2d 429, 431 (1973)). In order to establish excusable neglect, a party must provide the court with specific details that demonstrate due diligence in spite of uncontrollable circumstances. In *Black's Title, Inc. v. Utah State Insurance Department*, 1999 UT App 330, 991 P.2d 607, this court stated that the mere assertion of counsel's illness does not excuse inaction where counsel "neither described the illness, nor explained how it wholly prevented him from taking the steps required to maintain contact with [opposing] counsel." *Id.* ¶ 10. This court thus concluded that "[i]n the absence of such a showing, [the party]'s assertion does not demonstrate his neglect was excusable." *Id.* Furthermore, Utah courts have found no abuse of discretion in a trial court's denial of a motion to set aside a default judgment where the only excuse offered by a party for its untimely response was that the motion requiring the response was inadvertently misplaced within a counsel's office. *See Mini Spas, Inc.*, 733 P.2d at 132 ("This delay in filing a written protest was not due to circumstances beyond the [party]'s control . . . . [because] the only excuse for untimely response was that the notice was 'inadvertently stuck together in the [party]'s drawer'. . . .").

¶ 28 In this case, the excuses offered by Stevens for his failure to timely respond to the City's motion for summary judgment centered on AHM's office expansion, the relocation of work stations within the expanded office, and the hiring of new staff. The trial court found that these circumstances were part of the day-to-day challenges at a law firm, and these circumstances therefore were not beyond counsel's control. While Stevens presented general evidence that AHM had standard procedures for incoming pleadings, he did not offer any evidence of steps taken to avoid or minimize the challenges associated with the office renovation, temporary work stations, and new staff. Left with the unexplained "mystery" of the disappearance of a motion within AHM's office, the trial court did not abuse its discretion in concluding that Stevens had not demonstrated excusable neglect and in denying Stevens's motion to set aside the judgment.[6]

¶ 29 Stevens argues, in the alternative, that the summary judgment in favor of the City should be reversed under the "catch-all" provision of rule 60(b)(6). Specifically, Stevens argues that his counsel, Avery, was grossly negligent and that this gross negligence should not be attributed to him as

---

6. We also conclude that the trial court did not abuse its discretion in ruling on Stevens's motion to set aside the judgment without holding the requested hearing. "The trial court is afforded great latitude in determining whether a hearing will be held on non-dispositive motions." *Utah County v. Butler*, 2006 UT App 444, ¶ 19, 147 P.3d 963, *aff'd in part, rev'd in part on other grounds*, 2008 UT 12, 179 P.3d 775. Stevens's motion to set aside the judgment was not a dispositive motion. For such a motion, the trial court may hold a hearing "but is not required to do so." *Id.*

the client. The City argues, however, that Stevens did not properly raise this issue before the trial court and has not preserved the issue for appeal.

¶ 30 Our review of the record indicates that Stevens first raised the issue of his former counsel's alleged gross negligence in his reply memorandum to the City's memorandum in opposition to Stevens's motion to set aside. The City did not move to strike the portion of the memorandum devoted to this new issue. However, the trial court did not acknowledge or otherwise address the issue of gross negligence in its ruling on Stevens's motion.

 ¶ 31 Rule 7 of the Utah Rules of Civil Procedure "restricts a party's reply memorandum to rebuttal of matters raised in the opposing party's opposition memorandum." *Dimick v. OHC Liquidation Trust,* 2007 UT App 73, ¶ 16, 157 P.3d 347; *see also* Utah R. Civ. P. 7(c)(1) (stating that a "reply memorandum . . . shall be limited to rebuttal of matters raised in the memorandum in opposition"). "The principal reason we do not allow an issue to be first raised in a reply memorandum is because it is unfair to the opposing party to have no opportunity to respond." *Trillium U.S. v. Board of County Comm'rs,* 2001 UT 101, ¶ 17 n. 3, 37 P.3d 1093. While a trial court has "discretion to consider other memoranda," *Dimick,* 2007 UT App 73, ¶ 16, 157 P.3d 347, such memoranda "will [not] be considered without leave of court," Utah R. Civ. P. 7(c)(1). Where a party "first raise[s an] issue in his reply memorandum, it [is] not properly before the trial court and we will not consider it for the first time on appeal." *State v. Phathammavong,* 860 P.2d 1001, 1004 (Utah Ct.App. 1993).

¶ 32 Here, Stevens first raised the issue of his former counsel's gross negligence in his reply memorandum and did not request any leave of court to do so. Although the City did not move to strike this improperly raised issue, the trial court nonetheless disregarded it. The trial court's ruling addressed only Stevens's argument first asserted under rule 60(b)(6)—that there was a policy preference in Utah for cases to be decided on the merits. We do not consider the issue of gross negli-

gence on appeal because it was not properly raised before the trial court and the court did not have an opportunity to rule on it. *See Duke v. Graham,* 2007 UT 31, ¶ 26, 158 P.3d 540 ("In order to be preserved, an issue must be raised in the trial court such that the trial court has an opportunity to rule on the issue.").

### CONCLUSION

¶ 33 Stevens failed to meet his burden to set forth specific facts that demonstrate a genuine issue that precluded summary judgment. In light of the undisputed facts before the trial court, Stevens's inverse condemnation claim failed as a matter of law and summary judgment was appropriate. Further, the trial court did not abuse its discretion in denying Stevens's motion to set aside the summary judgment because Stevens did not demonstrate excusable neglect on the part of his former counsel. We do not consider Stevens's alternative argument of gross negligence as it was not properly raised before the trial court.

¶ 34 Accordingly, we affirm.

¶ 35 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and WILLIAM A. THORNE JR., Associate Presiding Judge.