208 P.3d 535 (2009)
2009 UT App 99
HAROLD SELMAN, INC., a Utah corporation; Fred Selman; Laura Selman; and Bret Selman, Plaintiffs and Appellants,
v.
BOX ELDER COUNTY, a body corporate and politic of the State of Utah, Defendant and Appellee.
No. 20080229-CA.
Court of Appeals of Utah.
April 16, 2009.
*536 Brandon J. Baxter and Shaun L. Peck, Logan, for Appellants.
Barton H. Kunz II, Salt Lake City; and Stephen R. Hadfield, Brigham City, for Appellee.
Mark L. Shurtleff, Attorney General, and Brent N. Bateman, Assistant Attorney General, Salt Lake City, for Amicus Curiae Office of the Property Rights Ombudsman.
Before Judges GREENWOOD, BENCH, and McHUGH, JJ.

OPINION
GREENWOOD, Presiding Judge:
¶ 1 Plaintiffs Fred, Laura, and Bret Selman are principals of Harold Selman, Inc. (collectively the Selmans), which engages in a variety of farming, ranching, and other agricultural pursuits on property the Selmans own, situated on the border between Box Elder and Cache Counties (the Property). Box Elder County attempted to build a road on a livestock trail that crossed the property. The Selmans sued and subsequently filed a request for arbitration of their dispute with the Office of the Property Rights Ombudsman (the Ombudsman). Box Elder County filed a counterclaim in district court to quiet title in the property. The district court bifurcated the claims and stayed the arbitration pending resolution of the quiet title action. The question before us is whether the stay of arbitration is permissible under the Ombudsman's enabling statutes (the Ombudsman Act), see Utah Code Ann. §§ 13-43-101 to -206 (Supp.2008). We affirm.

BACKGROUND
¶ 2 Situated partly in Box Elder County and partly in Cache County, the Property is designated by both counties as an Agriculture Protection Area, see Utah Code Ann. § 17-41-101(3) (Supp.2008), and is subject to a conservation easement. A livestock trail, on which animals are herded to the upper grazing meadows, traverses the Property.
¶ 3 In 2007, both counties passed resolutions claiming part of the Property as a county road. Later that year, Box Elder County initiated road construction on a remote road located on the Property, including the removal of a gate owned by the Selmans that blocked the livestock trail. The Selmans filed suit, praying for injunctive relief and asserting claims for trespass and inverse condemnation. The district court entered a Temporary Restraining Order halting the road construction and ordering reinstallation of the gate. That Temporary Restraining Order is still in effect. Three weeks later, the Selmans filed a second suit against Box Elder County asserting additional causes of action. The Selmans also filed suit against *537 Cache County to prevent it from beginning similar road construction.[1]
¶ 4 Before Box Elder County filed its answer, the Selmans filed a request for arbitration of their dispute with the Ombudsman, see Utah Code Ann. § 13-43-204, which the Ombudsman accepted. Box Elder County then answered the Selmans' complaint and asserted a counterclaim to quiet title and for injunctive relief. Box Elder County also filed a motion in district court to stay arbitration before the Ombudsman, to bifurcate the Selmans' claims from Box Elder County's quiet title claim, and to stay all discovery and deadlines on the Selmans' claims until the quiet title claim is decided. The district court granted Box Elder County's motion, bifurcating the case and staying arbitration. The Selmans appeal that decision pursuant to the Utah Uniform Arbitration Act. See Utah Code Ann. § 78B-11-129 (2008) (allowing parties to appeal "an order granting a motion to stay arbitration").

ISSUE AND STANDARD OF REVIEW
¶5 We are asked to consider whether the district court erred in bifurcating the claims and staying arbitration of the dispute. This is an issue of first impression. Because we conclude that the outcome of this case depends on statutory interpretation, we review the district court's decision for correctness. See Southern Utah Wilderness Alliance v. Automated Geographic Reference Ctr., 2008 UT 88, ¶ 13, 200 P.3d 643.

ANALYSIS
¶ 6 "In interpreting a statute, our goal is to ascertain the Legislature's intent. We do so by first evaluating the best evidence of legislative intent, namely, the plain language of the statute itself. We give the words of a statute their plain, natural, ordinary, and commonly understood meaning." Wasatch County v. Okelberry, 2008 UT 10, ¶ 13, 179 P.3d 768 (citations and internal quotation marks omitted). We thus carefully consider the statutory language at issue.
¶ 7 The Ombudsman Act establishes and defines the Office of the Property Rights Ombudsman, see Utah Code Ann. § 13-43-101 to -206 (Supp.2008). Among other things, the Ombudsman is authorized to mediate or arbitrate disputes between property owners and government entities:
If requested by the private property owner and otherwise appropriate, the ... Ombudsman shall mediate, or conduct or arrange arbitration for, disputes between private property owners and government entities that involve:
(a) takings or eminent domain issues;
(b) actions for eminent domain under Title 78B, Chapter 6, Part 5, Eminent Domain; or
(c) disputes about relocation assistance under Title 57, Chapter 12, Utah Relocation Assistance Act.
Id. § 13-43-204(1).
¶8 In this case, arbitration has been stayed pending judicial resolution of Box Elder County's quiet title counterclaim. Plaintiffs argue that quiet title actions fall under the umbrella of "takings or eminent domain issues" articulated by subsection (a), and thus should be included in, not litigated prior to, the arbitration. We disagree, concluding that this interpretation reads the phrase "takings or eminent domain issues" too broadly.
¶9 A "taking" is "[t]he government's actual or effective acquisition of private property *538 either by ousting the owner and claiming title or by destroying the property or severely impairing its utility." Black's Law Dictionary 1467 (7th ed.1999). Relatedly, "eminent domain" is "[t]he inherent power of a governmental entity to take privately owned property, esp[ecially] land, and convert it to public use, subject to reasonable compensation for the taking." Id. at 541. Both of these terms begin with the premise that a private property owner actually owns the property at issue; title to the property is not in dispute. The principle of inverse condemnation, which is not specifically included in the Ombudsman Act but was one of the claims originally asserted by the Selmans, also shares that underlying premise: "An action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings." Id. at 287. Even the constitutional provisions governing all similar claims begin with the premise that ownership of the property is not in dispute. See U.S. Const. amend. V ("[P]rivate property [shall not] be taken for public use, without just compensation."); Utah Const. art. I, § 22 ("Private property shall not be taken or damaged for public use without just compensation."). Furthermore, "[a] claimant must possess some protect[a]ble interest in property before that interest is entitled to recover under [the takings provision of the Utah Constitution]." Colman v. Utah State Land Bd., 795 P.2d 622, 625 (Utah 1990). This principle is applicable to inverse condemnations as well as direct takings. See Stevens v. LaVerkin City, 2008 UT App 129, ¶ 21, 183 P.3d 1059. We conclude that the ownership of the property in dispute is a threshold issue to the subsequent question of whether there has been a taking. The facts of this case illustrate why such threshold questions are appropriately resolved judicially before arbitration.
¶10 In their original complaint, the Selmans asserted three causes of action: claims for trespass and inverse condemnation and a petition for injunctive relief. Box Elder County did not assert a takings or eminent domain action and defended its position with a claim to quiet title. Thus, the claims in this case are currently amorphous. So long as the very ownership of the Property is in dispute, the remaining claims are undefined. Once the quiet title action is decided, however, the remaining issues are much clearer  either the Property belongs to the Selmans and the action is one for inverse condemnation, trespass, or both, or it does not and the entire dispute most likely evaporates.[2]
¶ 11 Accordingly, we conclude that some issues peripherally related to a takings claim are not appropriate for arbitration by the Ombudsman; the ownership of the property in dispute is one such issue. Further, the district court clearly retains jurisdiction over any matters not before the Ombudsman. Indeed, "[t]he trial court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." Utah Code Ann. § 78A-5-102(1) (2008).

CONCLUSION
¶12 The quiet title action in this case does not fall under the statutory responsibilities of the Ombudsman; that is, it is not a takings or eminent domain issue. Accordingly, we affirm the district court's ruling bifurcating the claims and staying arbitration pending the outcome of the quiet title claim.
¶13 WE CONCUR: RUSSELL W. BENCH and CAROLYN B. McHUGH, Judges.
NOTES
[1] Plaintiffs filed suit against Box Elder and Cache County separately. Both counties filed counterclaims. On August 7, 2007, Judge Low granted Cache County's motion to bifurcate the proceedings, allowing the quiet title action to move forward to litigation and staying the arbitration of the remaining claims. Judge Low further noted that "it does not appear to be the kind of claim which the ... Ombudsm[a]n was created to address in the first place." The Selmans filed a petition for interlocutory appeal with this court that was dismissed for failure to timely file a valid notice of appeal. On October 16, 2007, Judge Hadfield ordered that Box Elder County's and Cache County's cases be consolidated because they "involve common questions of law and fact." On January 14, 2008, Judge Hadfield ordered that the two counties' counterclaims to quiet title be tried together and bifurcated from the other issues. Judge Hadfield further ordered that discovery, deadlines, mediation, and arbitration would all be stayed until after the counties' quiet title counterclaims were resolved.
[2] We note that if the action is for trespass, it does not fall within the scope of the Ombudsman Act. See Utah Code Ann. § 13-43-201(1) (Supp.2008).